OPINION OF THE COURT
 

 Wesley, J.
 

 These consolidated appeals encompass five proposed class action suits. They are brought by plaintiffs alleging that defendants individually and collectively deceived them about the addictive properties of cigarettes and fraudulently induced them to purchase and continue to smoke cigarettes.
 

 The trial court determined that class certification was a statutorily authorized method to adjudicate the multiplicity of claims. After the court found that plaintiffs pleaded valid causes of action against defendants and that their claims were not preempted by the Federal Cigarette Labeling and Advertising Act (15 USC § 1331
 
 et seq.),
 
 it denied without prejudice defendant B.A.T. Industries’ motion to dismiss for lack of personal jurisdiction.
 
 [1]
 

 The Appellate Division decertified the classes. It also concluded that certain claims were preempted by the Federal Act, and dismissed the remaining causes of action. In granting
 
 *51
 
 leave to appeal, the Appellate Division certified the usual question to us: “Was the order of this Court, which reversed the orders of the Supreme Court, properly made?” We answer yes, and affirm the Appellate Division order.
 

 L
 

 Five class actions on behalf of New York consumers were filed against defendant tobacco companies and two other entities, the Council for Tobacco Research and the Tobacco Institute. In each of the suits, plaintiffs sought to represent a class of New York residents who, on or after June 19, 1980,
 
 [2]
 
 became or continued to be nicotine dependent as a result of buying and smoking cigarettes in New York that were manufactured by defendants.
 

 Plaintiffs allege that defendants used deceptive commercial practices to sell their cigarettes to New Yorkers and that they would not have bought these cigarettes had they known that nicotine is an addictive drug; that the tobacco companies controlled the level of nicotine in their cigarettes to cause or maintain nicotine addiction; and, that the companies secretly used chemicals to enhance the addictive propensities of nicotine. Plaintiffs also assert that the companies suppressed research indicating that nicotine is addictive. They seek only the reimbursement of the purchase cost of cigarettes that they claim they would not have bought, but for defendants’ fraudulent and deceptive practices.
 
 [3]
 

 In each case, plaintiffs’ lawyers moved to certify the class of addicted smokers alleged in the various complaints. In considering the requirements for class certification pursuant to CPLR 901 (a), the trial court determined that “a claim which turns on proof of actual addiction would involve far too many
 
 *52
 
 subjective factors”
 
 (Small v Lorillard Tobacco Co.,
 
 175 Misc 2d 294, 300). The court concluded that issues regarding addiction are not part of the claims presented because “the central issue is whether plaintiffs and the class members can recoup the money they spent in a transaction that was purportedly riddled with fraudulent activities”
 
 (id.,
 
 at 301). The court
 
 sua sponte
 
 eliminated the need to prove an individual’s nicotine áddiction; redefined the proposed class definition to include plaintiffs and potential class members who purchased defendants’ cigarettes while the defendants were allegedly engaging in a pattern of fraudulent activities; and,, as redefined, certified the classes. Plaintiffs have accepted the court-modified class definition for purposes of the litigation and their appeal to this Court.
 

 In a separate order, the trial court also determined that plaintiffs pleaded fraud with sufficient particularity and that their claims were not preempted by the Federal Labeling Act
 
 (Small v Lorillard Tobacco Co.,
 
 176 Misc 2d 413). The court also denied without prejudice defendant B.A.T.’s motion to dismiss for lack of personal jurisdiction.
 

 The Appellate Division reversed both orders on a composite appeal of the entire matter
 
 (Small v Lorillard Tobacco Co.,
 
 252 AD2d 1). After analyzing the requirements of CPLR 901 (a), the Court held that class certification was not justified under the statutory criteria. It also determined that plaintiffs’ claims were preempted by the Federal statute, insofar as they allege fraudulent concealment and failure to warn of the dangers of nicotine. While it concluded that plaintiffs’ claims alleging affirmative misrepresentation were not preempted by the Federal statute, the Court nonetheless dismissed those claims because they were not pleaded with the required specificity.
 
 [4]
 

 IL
 

 As a threshold matter, this Court must determine the breadth of its power to review the Appellate Division order decertifying the classes. Whether a lawsuit qualifies as a class action matter is a determination made upon a review of the statutory criteria as applied to the facts presented; it ordinarily rests within the sound discretion of the trial court (CPLR 901;
 
 see also, Brown v State of New York,
 
 250 AD2d 314, 320). The Appellate Division, as a branch of Supreme Court, is vested
 
 *53
 
 with the same discretionary power and may exercise that power, even when there has been no abuse of discretion as a matter of law by the nisi prius court
 
 (O’Connor v Papertsian,
 
 309 NY 465, 471).
 

 The Appellate Division stated in its order granting leave to appeal and in its order of reversal that its ruling was made on the law; in deciding the appeal, however, it also undertook an exercise of its discretion (see,
 
 e.g., Brown v City of New York,
 
 60 NY2d 893, 894). Our approach to this case is to review whether the Appellate Division abused its discretion as a matter of law (see,
 
 Weinberg v Hertz Corp.,
 
 69 NY2d 979, 981, citing
 
 Herrick v Second Cuthouse,
 
 64 NY2d 692, 693;
 
 Brady v Ottoway Newspapers,
 
 63 NY2d 1031, 1032-1033).
 

 CPLR 901 (a) sets forth the criteria a court must consider in deciding to certify a class action:
 

 “1. the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;
 

 “2. there are questions of law or fact common to the class which predominate over any questions affecting only individual members;
 

 “3. the claims or defenses of the representative parties are typical of the claims or defenses of the class;
 

 “4.
 
 the representative parties will fairly and adequately protect the interests of the class; and
 

 “5. a class action is superior to other available methods for the fair and efficient adjudication of the controversy.”
 

 In reviewing the number of potential claims, the Appellate Division agreed with the findings of the trial court that each of the five classes would contain at least one million members (CPLR 901 [a] [1]). It then turned its attention to CPLR 901 (a) (2) and determined that individual issues would predominate throughout the classes. Notwithstanding Supreme Court’s removal of addiction as an element of plaintiffs’ pleaded theory of their cases, the Appellate Division found that individual proof of addiction remains at the core of proving “injury,” for a claim under General Business Law § 349. The Appellate Division also noted that the dangers of smoking had been well documented and were generally known to the public. According to
 
 *54
 
 the Court, this widely available information foreclosed any presumption of reliance and required individualized inquiry into whether each class member was unaware of that information with regard to their causes of action for false advertising under section 350 of the General Business Law and common-law fraud.
 

 The Appellate Division also concluded that the proposed class actions would be unmanageable because of the individual issues of damages with respect to each of the five million plaintiffs. Moreover, because the named plaintiffs’ individual claims failed to establish the elements of reliance and causation, the Appellate Division determined that they were inadequate to represent a putative class of all persons who purchased and smoked cigarettes in New York. Thus, plaintiffs’ claims were not “typical” of the class (CPLR 901 [a] [3]). We are persuaded that the Appellate Division did not abuse its review and adjudicative powers in these respects, nor did it commit legal error in this regard.
 

 The Appellate Division next considered whether the named representative parties would fairly and adequately protect the interests of the classes (CPLR 901 [a] [4]). The Court concluded that plaintiffs had limited their claim for damages to the purchase price of cigarettes in order to shape a legally de minimis theory of the case:
 

 “[Plaintiffs] limit[ed] their claims to losses incurred after 1980, even though defendants have allegedly been defrauding the public since the 1950’s, for no other apparent reason than to make this a ‘negative value’ suit where each member’s damages are so small that only a class action would be worth the expense of litigation”
 
 (Small v Lorillard Tobacco Co.,
 
 252 AD2d 1, 11,
 
 supra).
 

 Moreover, the Appellate Division recognized a tension between the claims selected by the named plaintiffs and those of absent class members. The Court reasoned that the injury (the purchase price of cigarettes that they would not have otherwise purchased) of the redefined classes and the limitation of claims to losses incurred after 1980 could in effect preclude all New York smokers from bringing other possibly substantial claims for personal injury and emotional distress based on nicotine addiction. Because the named plaintiffs limited their theory in these significant ways, the Court concluded that plaintiffs’ claims inadequately represented a putative class of all persons
 
 *55
 
 who purchased and smoked cigarettes in New York. The Appellate Division did not abuse its discretion nor did it commit an error of law in this regard.
 

 Lastly, the Appellate Division examined the difficulties likely to be encountered in the management of the class actions (CPLR 901 [a] [5]). The Court considered how a trial on the merits would be conducted and determined that the proposed class actions would be unmanageable because of the individualized nature of many of the issues. The Court expressed concern over the potential litigation logjam that would render the actions unmanageable.
 

 In sum, within the range of this Court’s review powers, we are satisfied that the Appellate Division properly weighed the relevant statutory factors and correctly fulfilled its intermediate appellate court role and powers. No cogent basis has been presented upon which this Court should disturb that Court’s decertification-of-classes ruling.
 

 IIL
 

 Since plaintiffs cannot proceed as class representatives, this Court must next resolve whether they can move forward on the remaining individual causes of action.
 

 Section 349 (a) of the General Business Law encompasses deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this State. Section 349 governs consumer-oriented conduct and, on its face, applies to virtually all economic activity
 
 (Karlin v IVF Am.,
 
 93 NY2d 282, 290). Generally, claims under the statute are available to an individual consumer who falls victim to misrepresentations made by a seller of consumer goods through false or misleading advertising
 
 (Genesco Entertainment v Koch,
 
 593 F Supp 743, 751).
 

 To state a claim under the statute, a plaintiff must allege that the defendant has engaged “in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof’
 
 (Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank,
 
 85 NY2d 20, 25, citing
 
 Varela v Investors Ins. Holding Corp.,
 
 81 NY2d 958, 961; Givens, Practice Commentaries, McKinney’s Cons Laws of NY, Book 19, General Business Law § 349, at 565). Intent to defraud and justifiable reliance by the plaintiff are not elements of the statutory claim
 
 (Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, supra,
 
 at 26). However,
 
 *56
 
 proof that
 
 “a
 
 material deceptive act or practice
 
 caused actual, although not necessarily pecuniary, harm”
 
 is required to impose compensatory damages
 
 {id.
 
 [emphasis added]).
 

 Plaintiffs argue that the Appellate Division incorrectly held that they must prove that they were addicted to nicotine in order to allege a cognizable injury and harm, as contemplated and prescribed by the statute. According to plaintiffs, addiction is not the injury; rather, plaintiffs assert that defendants’ deception prevented them from making free and informed choices as consumers. Plaintiffs add that had they known that nicotine was addictive, they never would have purchased cigarettes. They posit that consumers who buy a product that they would not have purchased, absent a manufacturer’s deceptive commercial practices, have suffered an injury under General Business Law § 349. We disagree.
 

 Plaintiffs’ definition of injury is legally flawed. Their theory contains no manifestation of either pecuniary or “actual” harm; plaintiffs do not allege that the cost of cigarettes was affected by the alleged misrepresentation, nor do they seek recovery for injury to their health as a result of their ensuing addiction (General Business Law § 349 [h];
 
 Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, supra,
 
 at 26). Indeed, they chose expressly to confine the relief sought solely to monetary recoupment of the purchase price of the cigarettes. Plaintiffs’ cause of action under this statute, as redefined by the trial court and as embraced by them, thus sets forth deception as both act and injury.
 

 In rejecting plaintiffs’ flawed “deception as injury” theory, the Appellate Division correctly pinpointed that addiction is inescapably the cornerstone of plaintiffs’ legal claims. Because plaintiffs abandoned the addiction component of the legal theory of their cases, they therefore fail to demonstrate that they were “actually harmed” or suffered pecuniary injury by reason of any alleged deception within the meaning of the statute. They cannot have it both ways. Without addiction as part of the injury claim, there is no connection between the misrepresentation and any harm from, or failure of, the product.
 
 [5]
 
 
 *57
 
 Plaintiffs’ failure to present a legally cognizable injury also renders their common-law fraudulent concealment claims insufficient on their face. To make out a prima facie case of fraud, the complaint must contain allegations of a representation of material fact, falsity, scienter, reliance and injury
 
 (Vermeer Owners v Guterman, 78
 
 NY2d 1114, 1116). The circumstances constituting the fraud must be stated in detail (CPLR 3016 [b]).
 

 The flaw in plaintiffs’ statutory claim foretells the inadequacy of the common-law claims: an act of deception, entirely independent or separate from any injury, is not sufficient to state a cause of action under a theory of fraudulent concealment. Thus, plaintiffs’ common-law fraud claims also fail. As a result, there is no independent tort to provide a basis for liability under their concert of action, conspiracy, and aiding and abetting theories. These causes of action must fail as well
 
 (Rastelli v Goodyear Tire & Rubber Co.,
 
 79 NY2d 289, 295-297 [concert of action];
 
 Alexander & Alexander v Fritzen,
 
 68 NY2d 968, 969 [conspiracy]; Restatement [Second] of Torts § 876, comment
 
 d
 
 [aiding and abetting]).
 

 We do not reach the remaining arguments in this case, as they are unnecessary to the full disposition of this appeal.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.
 

 Judges Bellacosa, Smith, Ciparick, Bracken,
 
 [6]
 
 Cardona
 
 [6]
 
 and Lawton
 
 [6]
 
 concur; Chief Judge Kaye and Judges Levine and Rosenblatt taking no part.
 

 Order affirmed, etc.
 

 [1]
 

 . B.A.T. is a British-based company with a subsidiary, Brown & Williamson Tobacco Corporation, operating in the United States.
 

 [2]
 

 . Plaintiffs acknowledge that this date corresponds to the date that General Business Law § 349 — New York’s consumer fraud statute — was amended to give individuals who are injured by reason of any violation of this section a private right of action to enjoin the unlawful act or practice and/or an action to recover damages or $50, whichever is greater (General Business Law § 349 M).
 

 [3]
 

 . Plaintiffs’ original five causes of action were: (1) fraud/fraudulent concealment; (2) violations of General Business Law § 349; (3) violations of General Business Law § 350; (4) civil conspiracy; and (5) concert of action/ aiding and abetting. Plaintiffs are not appealing the dismissal of their claims brought under General Business Law § 350, for affirmative fraudulent misrepresentations and for injunctive relief. They therefore appeal only their claims of common-law fraudulent concealment, General Business Law § 349, civil conspiracy, and concert of action/aiding and abetting.
 

 [4]
 

 . The Appellate Division also dismissed the complaint against B.A.T. based on the insufficiency of plaintiffs’ complaint. Since we are affirming, there is no need to address or resolve B.A.T.’s jurisdictional issues.
 

 [5]
 

 . The Attorney General, who appears as
 
 amicus curiae
 
 in support of appellants’ position, likens this case to a situation where a distributor asserts that its bottled water is from a pure and pristine mountain stream while in reality, it was only tap water. The Attorney General may be right that a plaintiff might have a claim for the higher price the consumer paid for the product as a result of the misrepresentation in that circumstance. That is
 
 *57
 
 not this case. Plaintiffs do not contend that the deception here caused an inflated price.
 

 [6]
 

 . Designated pursuant to NY Constitution, article VI, § 2.