JED S. RAKOFF, U.S.D.J.
This litigation pits several putative classes of consumers against defendants L'Oreal USA, Inc. ("L'Oreal") and its subsidiary Soft Sheen-Carson LLC. The general details of this case are set forth in the Court's Memorandum dated July 18, 2017, granting in part and denying in part defendants' motions to dismiss, familiarity with which is here presumed. See ECF No. 98.
In brief, plaintiffs allege that defendants created, marketed, and distributed "Amla Legend Rejuvenating Ritual Relaxer," a hair relaxer that plaintiffs claim causes unreasonable pain and damages the hair and scalp. Plaintiffs further allege that defendants did not disclose these dangers and, instead, actively misled consumers into believing that the product was gentler and safer than other relaxers. Such misrepresentations, plaintiffs allege, were inherent in four statements made on every iteration of the product's packaging, to wit, that the product was "No-Lye," contained "Amla Oil" and a "Scalp Protector," and had "rejuvenating properties of intense *757 nourishment and conditioning." See Memorandum of Law in Support of Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel ("Pls. Mem.") at 6, n.3, ECF No. 105.
Plaintiff now seeks to certify four classes pursuant to Rule 23(b)(3). The proposed "National Class" is defined as "All persons who bought one or more of the Products in the United States from December 1, 2012 to the present," and seeks a full refund for each class member on the basis of fraud and negligent misrepresentation. The proposed "Multistate Class" is defined as "All persons who bought one or more of the Products in Alaska, California, Colorado, Delaware, Iowa, Kansas, Maine, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Texas, Utah, Vermont, Virginia, Washington, West Virginia, and Wyoming from December 1, 2012 to the present," and seeks a full refund on the basis of a breach of express warranty. The proposed "New York Class" is defined as "All persons who bought one or more of the Products in New York from August 19, 2013 to the present," and the proposed "Florida Class" is defined as "All persons who bought one or more of the Products in Florida from December 1, 2012 to the present." These two latter classes both seek full refunds on the basis of unjust enrichment, and the New York Class also seeks $50 in statutory damages for each class member pursuant to New York's General Business Law § 349. Pls. Mem. at 10-11.
Separately, plaintiffs also seek to certify the New York Class and Florida Class, as defined above, pursuant to Rule 23(b)(2), contending that they are entitled to injunctive and declaratory relief pursuant to Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204 ("FDUTPA"), and New York's General Business Law § 349. Pls. Mem. at 12.
In addition to all this, plaintiffs seek to certify a "Non-Economic Injury Class" under Rule 23(c)(4). This class is defined as "All persons who bought one or more of the products in Illinois, Kentucky, California, Missouri and Pennsylvania from December 1, 2012 to the present."[1] This class seeks only a liability determination under negligence and strict product liability, leaving for subsequent, individual lawsuits the issues of proximate causation and damages. Id. at 12.
Defendants oppose the motion, arguing that plaintiffs fail to satisfy various requirements of Rule 23. The Court received briefing from the parties and held oral argument on September 13, 2017.
Having fully considered the parties' submissions and arguments, the Court hereby grants plaintiffs' motion to certify the New York and Florida Classes under Rules 23(b)(2) and (3), but otherwise denies certification. The Court appoints Sandi Turnipseed, Jennifer Sanon, and Jasmin Hervey as class representatives for the New York Class, and Tiffany Raines as class representative for the Florida Class. The Court appoints Levi & Korsinsky, LLP and Geragos & Geragos, APC as class counsel.
I. Rule 23(a) Requirements
To prevail on their motion for class certification, plaintiffs must first satisfy the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy.
*758 See Fed. R. Civ. P. 23(a). The Court considers each in turn.
Rule 23(a)(1) provides that a class may be certified only if it "is so numerous that joinder of all members is impracticable." In the Second Circuit, numerosity is usually presumed for classes larger than forty members. See Pennsylvania Pub. Sch. Emp.'s Ret. Sys. v. Morgan Stanley & Co., Inc., 772 F.3d 111, 120 (2d Cir. 2014). The evidence of defendants' revenue shows that there were well over forty purchasers in each proposed class. See Declaration of Michael Rosner ("Rosner Decl.") dated August 11, 2017, Ex. 19 (filed under seal). Defendants do not challenge this prong. Accordingly, the Court concludes that the classes satisfy the numerosity requirement of Rule 23(a)(1).
Commonality is met when "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement may be met where individual circumstances differ but "injuries derive from a unitary course of conduct by a single system." Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997). Each alleged injury in this case arose from the same product whose packaging contained the same allegedly misleading representations and omissions. Each claim is premised on, inter alia, whether the product is capable of causing undue pain and injury, and the answer will be the same for every class member. Defendants do not meaningfully challenge this prong. Accordingly, the Court concludes that the proposed classes satisfy the commonality requirement of Rule 23(a)(2).
Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." The typicality requirement is met when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993). Defendants argue that "[t]here is no plaintiff or class member with a typical claim here," pointing to evidence of widely varying experiences, from satisfaction with the product to excruciating pain. See Memorandum in Opposition to Plaintiffs' Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel ("Defs. Mem.") at 22, ECF No. 115. These atypicalities are only, however, relevant to individual causation and damages for personal injuries; but plaintiffs here seek remedies for the economic injury of purchasing an unsafe product and the unjust enrichment earned by selling such a product, and the named plaintiffs in the proposed 23(c)(4) class reserve the question of damages for later, individual actions. Accordingly, plaintiffs have satisfied the typicality requirement of Rule 23(a)(3).
The adequacy requirement is met when "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation marks and citation omitted).
Defendants argue that plaintiffs who seek only a refund or $50 in statutory damages cannot adequately represent class members who suffered more serious damages. But those with graver injuries will have the opportunity to opt out. Moreover, personal injury claims that cannot be litigated in this class action will not be barred in later proceedings. See 18 Wright & Miller, et al. Fed. Prac. & Proc. § 4413 (3d ed.) ("A judgment that expressly leaves open the opportunity to bring a *759 second action on specified parts of the claim or cause of action that was advanced in the first action should be effective to forestall preclusion."); Cooper v. Fed. Reserve Bank of Richmond, 467 U.S. 867, 880, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984). As the Court determined when it granted the motion to appoint interim counsel, counsel is qualified, experienced, and should continue to ably conduct the litigation. See ECF No. 88. Defendants do not challenge counsel's adequacy. Accordingly, the Court holds that plaintiffs have satisfied the requirements of Rule 23(a)(4).
The Second Circuit imposes an implied fifth requirement of "ascertainability" on class actions. "[A] class is ascertainable if it is defined using objective criteria that establish membership with definite boundaries." In re Petrobras Sec. Litig., 862 F.3d 250, 257 (2d Cir. 2017). The proposed classes have such definite, objective boundaries: they include only those who purchased the Relaxer between certain dates and in certain places. Defendants do not challenge this prong.
The Court thus concludes that plaintiffs have satisfied all requirements of Rule 23(a).
II. National and Multistate Classes Under Rule 23(b)(3)
To prevail on their motion for class certification, each class must also meet one of the three conditions of Rule 23(b). Plaintiffs seek to certify under Rule 23(b)(3) a class of " [a]ll persons who bought one or more of the products in the United States from December 1, 2012 to the present" to bring claims of fraud and negligent misrepresentation. Pls. Mem. at 11.
Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members." To meet the predominance requirement, plaintiff need not "prove that each element of her claim is susceptible to classwide proof. What the rule does require is that common questions predominate over any questions affecting only individual class members." Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds, 568 U.S. 455, 469, 133 S.Ct. 1184, 185 L.Ed.2d 308 (2013) (internal quotations, citations, and alterations omitted).
Rule 23(b) also requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3) instructs that the Court should consider four factors: individuals' interest in controlling the litigation, prior actions involving the parties, the desirability of the forum, and manageability.
A. The National Class Claim of Fraud
Plaintiffs seek to certify a "Nationwide Class" for their claims of fraud and negligent misrepresentation. The basic elements of fraudulent misrepresentation are the same across jurisdictions. The plaintiff must show (1) that the defendant made a material misrepresentation, with (2) scienter (i.e., the intent to defraud), and (3) that the plaintiff relied on the misrepresentation to her detriment (i.e., she suffered an injury proximately caused by the misrepresentation).
The Second Circuit has held that "fraud claims based on uniform misrepresentations made to all members of the class," unlike those "based on individualized misrepresentations," are "appropriate subjects for class certification because the standardized misrepresentations may be established by generalized proof." Moore v. PaineWebber, Inc., 306 F.3d 1247, 1253 (2d Cir. 2002) ; see also In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 118 (2d Cir. 2013).
The four challenged representations appeared on every iteration of the *760 product's packaging throughout the class period. Pls. Mem. at 6, n.3; Defs. Mem. at 10. L'Oreal did sell the product in three different cartons during the class period-the Launch Carton, the Revised Carton, and the Bilingual Carton-and the challenged statements appeared in different contexts on those various cartons. But defendants offer no reason to believe these peripheral changes were material to plaintiffs' claims.
However, the presence of uniform misrepresentations "only satisfies half of the equation" where reliance is also an element. McLaughlin v. Am. Tobacco Co., 522 F.3d 215, 223 (2d Cir. 2008). Thus, in McLaughlin, the Second Circuit decertified a class of purchasers of "Light" cigarettes who made RICO claims based on the widespread and uniform misrepresentation that the cigarettes were healthier than non-Light cigarettes. The Court held that "individualized proof is needed to overcome the possibility that a member of the purported class purchased Lights for some reason other than the belief that Lights were a healthier alternative." Id. at 223.
There is, however, no "blanket rule" in the Second Circuit that "a fraud class action cannot be certified when individual reliance will be an issue." Id. at 224 (quoting Castano v. Am. Tobacco Co., 84 F.3d 734, 745 (5th Cir. 1996) ). Certification is appropriate if the plaintiffs can prove reliance "through common evidence (that is, through legitimate inferences based on the nature of the alleged misrepresentations at issue)." In re U. S. Foodservice, 729 F.3d at 120. For example, a misrepresentation may be so fundamental to the product itself that any purchaser would necessarily rely on it. See Ebin v. Kangadis Food Inc., 297 F.R.D. 561, 569 (S.D.N.Y. 2014) (product sold as "100% pure olive oil" was allegedly 0% olive oil); Hart v. BHH, LLC, No. 15-cv-4804, 2017 WL 2912519, at *8 (S.D.N.Y. July 7, 2017) (pest repellent allegedly did not repel pests). In these cases, "reliance and causation are generally established through the presumption that a customer would not have purchased the product for any other reason than the advertised one." Hart, 2017 WL 2912519, at *8.
The challenged statements in this case, however, are not similarly fundamental to the product itself. Plaintiffs do not allege that the product does not actually relax hair, but only that defendants in effect misrepresented the product's safety and gentility to consumers. There are numerous reasons someone may have purchased the product apart from believing that it is gentler or safer than other relaxers. Indeed, some named plaintiffs did not know or care about the challenged representations, purchasing the product because of, among other reasons, brand loyalty, endorsements, or the price. See Defs. Mem. at 11-12 (citing deposition testimony).[2] This case is therefore substantially similar to McLaughlin, where the court noted, "each plaintiff in this case could have elected to purchase light cigarettes for any number of reasons, including a preference for the taste and a feeling that smoking Lights was 'cool.' " 522 F.3d at 225. Individual issues predominate for the same reasons.
In response, plaintiffs attempt to recast their claim as involving not fraudulent misrepresentations, but rather fraudulent omissions, i.e., a failure to disclose the alleged dangerousness of the product. To this end, plaintiffs submit a declaration from their expert, alleging that the product has a fundamentally dangerous chemical *761 composition that, if revealed to the consumer, would cause every reasonable consumer to refrain from purchasing the product. See Rosner Decl., Ex. 1. According to plaintiffs, no reasonable, properly informed consumer would purchase such a product, and therefore classwide reliance can be shown by proving that, in the absence of such information, every purchaser inherently believed that the product was not as dangerous as plaintiffs' expert claims it to be.
However, omissions generally cannot serve as the basis for a fraud claim. In most states, there are two exceptions. The first exception is where a party takes active steps to prevent the buyer from discovering a defect. See Restatement (Second) of Torts § 550 (1977). Plaintiffs do not allege any affirmative act of concealment beyond the challenged assertions, on which they would have to show individual reliance.
The second exception is where the defendant has a special duty, such as a fiduciary duty, to disclose the omitted information to the plaintiff. See Restatement (Second) of Torts § 551 (1977). The Restatement specifically recognizes a duty requiring parties to a transaction to disclose
facts basic to the transaction, if [they] know[ ] that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.
§ 551(2)(e). It is true that several states have applied this provision to hold that manufacturers have a duty to disclose product defects to end-customers. See Peters v. Amoco Oil Co., 57 F.Supp.2d 1268, 1282 (M.D. Ala. 1999) ; Doll v. Ford Motor Co., 814 F.Supp.2d 526, 546 (D. Md. 2011) ; In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig., No. 1:14-cv-3722, 2015 WL 4591236, at *32 (D.N.J. July 29, 2015). However, several other states have held that this special duty does not oblige manufacturers to disclose defects, opting instead to leave such claims to the realm of product liability. See, e.g., Wright v. Brooke Grp. Ltd., 652 N.W.2d 159, 176 (Iowa 2002) ("Principles of products liability law define the duties of disclosure owed by a manufacturer to a consumer arising out of their relationship as such."); Harris v. Brush Engineered Materials, Inc., No. 1:04cv598, 2005 WL 3806048, at *2 (S.D. Miss. Feb. 18, 2005) ("[I]n Mississippi, the mere silence or nondisclosure of material facts by a manufacturer does not support a finding of fraudulent concealment brought by the ultimate consumer."); In re Gen. Motors LLC Ignition Switch Litig., 202 F.Supp.3d 362, 373 (S.D.N.Y. 2016) ("[T]he Court finds no basis to conclude that the Virginia Supreme Court would permit [plaintiff] to repackage her failure-to-warn claim as a constructive fraud-by-omission claim."); Mann v. Lincoln Elec. Co., No. 1:06 cv 17288, 2010 WL 1644135, at *3 (N.D. Ohio Apr. 23, 2010) (holding that South Dakota law does not "impose[ ] a fraud-based duty to disclose in product liability cases premised on allegedly deficient warning labels"). "To hold otherwise would convert all product manufacturer's duty to warn claims into fraud claims." Burton v. R.J. Reynolds Tobacco Co., 397 F.3d 906, 913 (10th Cir. 2005) (applying Kansas law).
In some other states, moreover, viability of a fraud claim based on pure omission is unclear, although federal courts applying the laws of some such states have found that fraud claims based on product defects are subsumed by those states' product liability statutes, and not actionable under the common law of fraud. See, e.g., Strayhorn v. Wyeth Pharm., Inc., 737 F.3d 378, 402 (6th Cir. 2013) (Kentucky and Tennessee);
*762 Stoddard v. Wyeth, Inc., 630 F.Supp.2d 631, 633 (E.D.N.C. 2009) (North Carolina); Nafar v. Hollywood Tanning Sys., Inc., No. 06-cv-3826, 2010 WL 2674482, at *9 (D.N.J. June 30, 2010) (New Jersey).
To make matters even more complicated, various other states have their own idiosyncrasies. See, e.g., Lassen v. Nissan N. Am., Inc., 211 F.Supp.3d 1267, 1286 (C.D. Cal. 2016) (as a matter of California law, design defect standards cannot be imported into consumer fraud cases where the product functions as designed); McCabe v. Daimler AG, 160 F.Supp.3d 1337, 1351 (N.D. Ga. 2015) (no duty to disclose under Georgia fraud law where there was no direct relationship between the manufacturer and the end-customer).
Plaintiffs make no effort to harmonize these state laws, nor to show that these "differences fall into a limited number of predictable patterns" that could be readily managed at trial. Steinberg v. Nationwide Mut. Ins. Co., 224 F.R.D. 67, 77 (E.D.N.Y. 2004) (internal quotation marks omitted); see also In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d at 127 (it is plaintiffs' burden to establish, "through an 'extensive analysis' of state law variances," that differences in the relevant jurisdictions' laws can be managed) (quoting In re Sch. Asbestos Litig., 789 F.2d 996, 1010 (3d Cir. 1986) ).
The Court therefore finds that the individual issue of reliance predominates as to the affirmative misrepresentation claims, and that plaintiffs have not met their burden to show that varying state laws regarding fraudulent omissions can be managed. Plaintiffs' motion to certify the Nationwide Class as to the fraud claim is therefore denied.
B. The Nationwide Class Claim of Negligent Misrepresentation
Plaintiffs also seek to certify a nationwide class, under Rule 23(b)(3), to pursue claims of negligent misrepresentation. However, state laws regarding negligent misrepresentation differ drastically.
To begin with, some states, such as Arkansas, do not even recognize the tort of negligent misrepresentation. See S. Cty., Inc. v. First W. Loan Co., 315 Ark. 722, 725, 871 S.W.2d 325 (1994). Neither does Virginia, though it does recognize "constructive fraud," which has somewhat similar elements. See JTH Tax, Inc. v. Whitaker, No. 2:07-cv-170, 2007 WL 2821830, at *3 (E.D. Va. Sept. 27, 2007). Idaho only recognizes negligent misrepresentations as between accountants and clients, Mannos v. Moss, 143 Idaho 927, 935, 155 P.3d 1166 (2007), and Indiana recognizes it "only in the limited context of an employer-employee relationship," Bledsoe v. Capital One Auto Fin., 1:14-CV-02109, 2016 WL 1270206, at *8 (S.D. Ind. Mar. 31, 2016).
Even among states that are more generous, laws differ dramatically regarding whether and when the economic loss rule operates to bar negligent misrepresentation claims. See R. Joseph Barton, Drowning in A Sea of Contract: Application of the Economic Loss Rule to Fraud and Negligent Misrepresentation Claims, 41 Wm. & Mary L. Rev. 1789, 1813-22 (2000) (outlining four principle approaches, but citing wide variations and intra-jurisdiction splits even among those four); Sebago, Inc. v. Beazer E., Inc., 18 F.Supp.2d 70, 95-97 (D. Mass. 1998) (same). For example, neither Texas nor Kansas permits negligent misrepresentation claims that seek to recover only economic damages. Ritchie Enterprises v. Honeywell Bull, Inc., 730 F.Supp. 1041, 1052 (D. Kan. 1990) ("[T]he law is well settled that a negligence action is unavailable if only economic losses are sought and that any liability and damages are dictated by contract principles."); D.S.A., Inc. v. Hillsboro Indep. Sch. Dist., 973 S.W.2d 662, 664 (Tex. 1998) ("Repudiating the independent injury requirement *763 for negligent misrepresentation claims would potentially convert every contract interpretation dispute into a negligent misrepresentation claim."). Many states waive the economic loss rule only as to defendants with extra-contractual duties of care to avoid making misrepresentations. In some states, only those who are "in the business of supplying information for the guidance of others in their business transactions," Moorman Mfg. Co. v. Nat'l Tank Co., 91 Ill. 2d 69, 89, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982) have such a duty, leading to piecemeal application to different professions, see, e.g. Congregation of the Passion, Holy Cross Province v. Touche Ross & Co., 159 Ill. 2d 137, 159-64, 201 Ill.Dec. 71, 636 N.E.2d 503 (1994) (not waived for advertising firms, architects, or engineers, but waived for health care professionals, insurance brokers, accountants, and attorneys). Other states waive the economic loss rule, but not in cases of a defective product. See Sebago, Inc., 18 F.Supp.2d at 96 (applying Massachusetts law).
Further still, some jurisdictions require an affirmative misrepresentation on which the plaintiff relied. See, e.g., Flanagan Lieberman Hoffman & Swaim v. Transamerica Life and Annuity Co., 228 F.Supp.2d 830, 851 (S.D. Ohio 2002) (requiring that a plaintiff plead reliance on "an affirmative false statement" because "a claim for negligent misrepresentation does not apply to omissions"). Others allow omissions to suffice only where "the defendant has previously spoken on an issue, and upon learning that he was incorrect, he fails to correct his statement." State Coll. Area Sch. Dist. v. Royal Bank of Canada, 825 F.Supp.2d 573, 589 (M.D. Pa. 2011).
Such immense variation in state laws therefore makes individual questions predominate and renders the proposed class action unmanageable and inferior to narrower actions in fewer states. For example, proving reliance on defendants' alleged affirmative misrepresentations, in those states that require it, will cause significant individual inquiry that would overwhelm the common questions. See McLaughlin, 522 F.3d at 225. Likewise, determining the law of each jurisdiction presents its own manageability concerns. Moreover, where state law is unsettled, that jurisdiction should ideally resolve the issue, making other fora more desirable. Furthermore, the patchwork of law regarding the duty to avoid misrepresentations and waiver of the economic loss rule would be unmanageable at trial and overwhelming to a jury. Without multiplying examples further, the plaintiffs' claims of negligent misrepresentation do not satisfy Rule 23(b)(3).
For the foregoing reasons, the Court denies plaintiffs' motion to certify the Nationwide Class.
C. Multistate Class
In addition to its Nationwide Class, plaintiffs seek to certify a "Multistate Class" grounded in the express warranty laws of 25 states. Whether the challenged statements are express warranties and whether they were breached are common questions that can be proved using common evidence. However, reliance is once again a problem. While some of these states have accepted the U.C.C.'s commentary that "no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement," U.C.C. § 2-313, cmt. 3,[3] others *764 have not, see In re Gen. Motors Corp. Dex-Cool Prod. Liab. Litig., 241 F.R.D. 305, 319-21 (S.D. Ill. 2007) (outlining approaches to reliance in express warranty claims in various states); Darisse v. Nest Labs, Inc., No. 5:14-cv-01363-BLF, 2016 WL 4385849, at *11 (N.D. Cal. Aug. 15, 2016) (same).
Furthermore, some states included in the proposed class require the plaintiff to affirmatively demonstrate reliance. See, e.g., Maine Farmers Exch. v. McGillicuddy, 1997 ME 153, ¶ 7, 697 A.2d 1266 ("[T]he purchaser must show reliance on the affirmation in order to make out a cause of action for a breach of warranty"); Nebraska Popcorn, Inc. v. Wing, 258 Neb. 60, 67, 602 N.W.2d 18 (1999) ("[T]he buyer must prove reliance upon the warranty"); Maxwell v. Remington Arms Co., LLC, No. 1:10-cv-918, 2014 WL 5808795, at *3 (M.D.N.C. Nov. 7, 2014) (North Carolina law "requires a showing of ... the plaintiff's reliance on the warranty in choosing to purchase the product"). Some allow the use of circumstantial evidence or only require a showing that any reasonable person would rely on such a statement. See, e.g., Strawn v. Farmers Ins. Co. of Oregon, 350 Or. 336, 356, 258 P.3d 1199, adhered to on reconsideration, 350 Or. 521, 256 P.3d 100 (2011) (permitting classwide inference of reliance where "the same misrepresentation was made to all individual class members and was sufficiently material or central to the plaintiff's and the defendant's dealings that the individual class members naturally would have relied on the misrepresentation"); Bernick v. Jurden, 306 N.C. 435, 448, 293 S.E.2d 405 (1982) ("[T]he element of reliance can often be inferred from allegations of mere purchase or use if the natural tendency of the representations made is such as to induce such purchase or use.").
Other states presume reliance under varied circumstances, shifting the burden to the defendant to show that there was none. See, e.g., Kelleher v. Marvin Lumber & Cedar Co., 152 N.H. 813, 844, 891 A.2d 477 (2005) ("The presumption that a seller's statement becomes a part of the basis of the bargain can be overcome ... when the buyer knew the statement to be false or was not influenced by it"). The exact contours of the law are often unclear. See, e.g., PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship, 146 S.W.3d 79, 99 (Tex. 2004) ("While 'particular' reliance may not be necessary, we have held several times that something rather like it is.").[4]
Plaintiffs have not shown that these differences can be properly managed in a single proceeding. Furthermore, reliance on the challenged express warranties is not self-evident. Individual issues therefore predominate as to those states that require an affirmative showing of reliance, see McLaughlin, 522 F.3d at 224, as well as those that permit defendants to rebut a presumption of reliance, see Dunnigan v. Metro. Life Ins. Co., 214 F.R.D. 125, 140 (S.D.N.Y. 2003) (denying class certification *765 where there were credible individual defenses to a rebuttable presumption of reliance). The Court accordingly denies plaintiffs' motion to certify the Multistate Class.
III. The Non-Economic Injury Class Under Rule 23(c)(4)
"When appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c) (4. Plaintiffs seek to certify an issue class on behalf of purchasers in five states to establish defendants' liability in negligence and strict product liability. That determination would be followed by separate, individual hearings to determine specific causation and damages for each purchaser in those five states.
In the Second Circuit, "a court may employ Rule 23(c)(4)(A) to certify a class as to an issue regardless of whether the claim as a whole satisfies the predominance test." In re Nassau Cty. Strip Search Cases, 461 F.3d 219, 221 (2d Cir. 2006). If common resolution of even a single issue would further the efficient administration of justice, then the class should be certified. But "[c]ertification is not appropriate if, despite the presence of a common issue, certification would not make the case more manageable or serve the varied interests Rule 23 seeks to advance." Hamilton v. Accu-tek, 935 F.Supp. 1307, 1332 (E.D.N.Y. 1996). And "the judge must not divide issues between separate trials in such a way that the same issue is reexamined by different juries" in violation of the Seventh Amendment. In the Matter of Rhone-Poulenc Rorer, Inc., 51 F.3d 1293, 1303 (7th Cir. 1995) ; see also Blyden v. Mancusi, 186 F.3d 252, 268 (2d Cir. 1999) (decertifying liability class where damages juries would have to determine anew whether any specific act against a plaintiff inmate was in fact a reprisal).
Plaintiffs argue that, if the jury here resolves the question of whether the product is defective because it causes or is capable of causing excessive hair breakage, hair loss, scalp and skin irritation, and burning even when properly applied, later cases can limit their proof to whether a given plaintiff bought and applied the product and suffered one of the enumerated injuries.
However, defendants are likely to argue that individual plaintiffs were contributorily negligent. The package warns consumers that use of the product in 20 separate circumstances risks damage to their scalp or hair, and the application process involves 7 principal steps, each with a variety of substeps. Defendant's expert outlines ways in which misapplication of the product could result in injury. Declaration of Mort Westman dated August 25, 2017 ¶¶ 5-13, ECF No. 124. Defendants also collect deposition testimony from named plaintiffs showing that none correctly applied the product. Declaration of Justin Lewis, dated August 25, 2017, Ex. 8, ECF No. 120. While it is not clear that these errors actually resulted in these plaintiffs' alleged injuries, it is clear that negligence in the application of the product is likely very common, and therefore likely to be a frequent defense in later proceedings.
Under plaintiffs' proposal, later juries will have to decide comparative negligence and proximate causation, both of which overlap with the issue of defendant's negligence. See Matter of Rhone-Poulenc Rorer, Inc., 51 F.3d at 1303. A later jury would have to decide whether and to what extent the inherent danger of the product caused any individual plaintiff's injury, as opposed to the plaintiff's own negligence. To do so, the jury would have to decide how negligent it believes defendants were, and could find that they were not negligent at all. See Castano, 84 F.3d at 751. Moreover, every jury would have to hear from an expert to decide whether and to what *766 extent defendants' negligence, rather than the plaintiff's, caused that plaintiff's injury, reducing the efficiency gains from this action.
Furthermore, should the New York and Florida Classes (discussed below) succeed on their claims, they will have shown that the product inherently and unreasonably damages hair and scalps. Defendants will likely be precluded from arguing otherwise in other actions. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 331-32, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Defendants will thus be hard pressed to argue that the product is not defective or unreasonably dangerous, or that it is reasonably safe for its intended use. The marginal efficiency gains from this proposed class are therefore minimal, while the risk of a second jury deciding the same issue is high. The Court therefore denies plaintiffs' motion to certify the Non-Economic Injuries Class.
IV. The New York and Florida Subclasses
Plaintiffs also seek to certify one class of New York purchasers and one of Florida purchasers, each bringing an unjust enrichment claim under Rule 23(b)(3) seeking full refunds, and seeking injunctive and declaratory relief under Rule 23(b)(2). The New York subclass also seeks, pursuant to Rule 23(b)(3), statutory damages under New York General Business Law § 349.
A. 23(b)(3) Claims
In Florida, to succeed on an unjust enrichment claim, a plaintiff must show that "(1) the plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) the defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." James D. Hinson Elec. Contracting Co. v. BellSouth Telecomms., Inc., 275 F.R.D. 638, 646 (M.D. Fla. 2011) (internal quotation marks omitted). The elements in New York are very similar. See Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000) ("To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution.") (internal quotation marks omitted).
Plaintiffs allege that defendants knew the product was dangerous and worthless but chose to misleadingly suggest that it was gentle and safe. The truth of those allegations does not vary between plaintiffs. And if those allegations are borne out by the evidence, a jury need only decide once whether equity requires restitution. "Defendants' business operations are the same as to all members of the putative class. Given this fact, it is difficult to conceive of any significant equitable differences between class members, and Defendants do not suggest any." Cty. of Monroe, Fla. v. Priceline.com, Inc., 265 F.R.D. 659, 671 (S.D. Fla. 2010).
Neither state requires privity. See Hornstein v. Guarantee Ins. Co., 471 So.2d 108, 109-10 (Fla. Dist. Ct. App. 1985) ; Romano v. Motorola, Inc., No. 07-CIV-60517, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007) ; Mandarin Trading Ltd. v. Wildenstein, 16 N.Y. 3d 173, 182, 919 N.Y.S.2d 465, 944 N.E.2d 1104 (2011). The New York Court of Appeals has held that an unjust enrichment claim will not survive "if the connection between the parties is too attenuated," id., but an end-customer has a sufficiently direct relationship with a manufacturer, see Waldman v. New Chapter, Inc., 714 F.Supp.2d 398, 404 (E.D.N.Y. 2010). Defendants cite no case law, and this Court has found none, suggesting that reliance is required for either state or that material omissions cannot form the basis of unjust enrichment claims.
*767 Defendant argues that the threshold issue of whether an alleged class member actually purchased the product during the class period will require individual determination and thus overwhelm common questions. Plaintiffs propose that individuals come forward with receipts, the serial number on their product box, or a sworn affidavit to prove their membership. Credit card records may also prove class membership. These are undeniably individual inquiries, and this concern is well taken. But the class action device is designed for cases like this, where a large number of consumers have been injured in the same way, but few or none have suffered an injury sufficiently large as to justify bringing an individual lawsuit. "[P]redominance requires a qualitative assessment too; it is not bean counting." Butler v. Sears, Roebuck & Co., 727 F.3d 796, 801 (7th Cir. 2013). The individual inquiry required to determine class membership is far outweighed by the central, common question of liability.
Defendants also point to allegedly individual issues regarding damages, which they argue preclude class treatment. While plaintiffs have avoided many of the individual questions by seeking only a refund, defendants argue that plaintiffs are not entitled to a full refund because the product is not completely worthless. Indeed, several named plaintiffs admitted that they experienced some benefit from the product. Defs. Mem. at 19 (collecting deposition testimony). However, plaintiffs, relying on their expert, assert that they will still be able to show damages warranting a full refund. Therefore the defense's contention is "properly addressed at trial or in a ruling on a summary-judgment motion. The allegation should not be resolved in deciding whether to certify a proposed class." Amgen Inc., 568 U.S. at 470, 133 S.Ct. 1184 (internal quotation marks, citations, and alterations omitted). Plaintiffs' full refund damages model may fail on the merits, but if it does, it will fail for the entire class at once.
Furthermore, in the context of an unjust enrichment claim, a full refund may be available even where the product does ultimately confer a benefit on some purchasers. If a product is so dangerous that no informed, reasonable person would purchase it, then even if an actual purchaser from whom the danger was concealed went ahead and purchased it and received some incidental benefit thereby, the purchaser may still be entitled to a full refund on the product she never would have purchased but for defendant's concealment, since the defendant was unjustly enriched by the very act of plaintiff's purchase. In an analogous context, several circuit courts have held that an economic, point-of-sale injury is not erased just because the purchaser was lucky enough to avoid the effects of the alleged misrepresentations or omissions. See, e.g., Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1173 (9th Cir. 2010) (certifying class of car purchasers where injury did not manifest in all cars); In re Whirlpool Corp. Front-LoadingWasher Prod. Liab. Litig., 722 F.3d 838, 857 (6th Cir. 2013) (affirming certification of class of washing machine purchasers even where injury did not manifest in every machine).[5]
Plaintiffs' full refund damages model is complicated by the fact that the product was sold at prices ranging from $5.50 to $13.14, largely because of the use of coupons. Defs. Mem. at 20 (citing evidence). Plaintiffs argue that this does not present a problem because the total damage *768 amount-that is, defendants' total revenue from sales of the product-is readily discoverable, as is the number of sales, so each individual plaintiff can simply receive the average price. This practical approach provides plaintiffs with a remedy and prevents defendant from paying more than they owe. In any case, even if individualized inquiry is required on this point, it will not cause individual issues to predominate over the fundamental common question of liability.
Plaintiffs have therefore shown that common issues predominate as to their unjust enrichment claims.
The lead plaintiffs of the New York Class also seek statutory damages of $50 pursuant to New York's General Business Law § 349(h). "To state a claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009). "Deceptive acts are defined objectively as acts likely to mislead a reasonable consumer acting reasonably under the circumstances." Id. at 74 (internal quotation marks and alterations omitted). Reliance is not required. See Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005) ; Stutman v. Chem. Bank, 95 N.Y.2d 24, 30 n.2, 709 N.Y.S.2d 892, 731 N.E.2d 608 (2000) (holding that reliance is not required, and that "the materiality of the omission or misstatement satisfies the causation requirement").
Defendant's reliance on Small v. Lorillard Tobacco Co., 94 N.Y.2d 43, 698 N.Y.S.2d 615, 720 N.E.2d 892 (1999) is misplaced. In Small, plaintiffs brought suit under Section 349 against cigarette manufacturers, arguing that they would not have purchased the cigarettes had they known they were addictive. Id. at 56, 698 N.Y.S.2d 615, 720 N.E.2d 892. However, the plaintiffs in Small failed to "allege that the cost of cigarettes was affected by the alleged misrepresentation," and therefore pled no injury beyond the deception itself. Id. Here, plaintiffs argue that the product was rendered "worthless" because of its inherent danger. E.g., Pls. Reply at 10. "The deception is the false and misleading label, and the injury is the purchase price." Ebin v. Kangadis Food Inc., 2013 WL 6504547, at *5 (S.D.N.Y. Dec. 11, 2013) ; see also Orlander v. Staples, Inc., 802 F.3d 289, 302 (2d Cir. 2015).
As with the unjust enrichment claim, each of these elements is susceptible to proof with common evidence, so common issues predominate. See Jermyn v. Best Buy Stores, L.P., 256 F.R.D. 418, 436-37 (S.D.N.Y. 2009) (certifying classes under New York law making both unjust enrichment and Section 349 claims).
As to superiority, pursuing individual actions seeking only a refund would be prohibitively expensive. "In such circumstances, the class action device is frequently superior to individual actions." Seijas v. Republic of Argentina, 606 F.3d 53, 58 (2d Cir. 2010). Those purchasers who have suffered more severe personal injuries that may justify individual litigation have an interest in controlling their own case, but they can opt out or bring product liability claims in later proceedings.
Defendant argues that L'Oreal's internal mechanisms for resolving consumer grievances are the superior method for remedying injured customers. Defs. Mem. at 22; Declaration of Erin DeVincenzo dated August 25, 2017 ¶¶ 2, 5-11, 22-23, ECF No. 118 (describing internal procedures). While consideration of extrajudicial proceedings is appropriate under the superiority analysis, see 7AA Wright & Miller, et al., Fed. Prac. & Proc. § 1779 (3d ed.) ("The court need not confine itself to other available 'judicial' methods of handling the controversy in deciding the superiority of the *769 class action."), a general repository for all consumer complaints is not superior to a specific action that can determine liability on a classwide basis. Compare Berley v. Dreyfus & Co., 43 F.R.D. 397, 398-99 (S.D.N.Y. 1967) (finding extrajudicial process superior where defendant offered formal program of full refunds).
The Court therefore finds that common issues predominate as to the New York and Florida Classes' 23(b)(3) claims, and that a class action is the superior method of resolving those disputes. The Court grants plaintiffs' motion to certify those classes.
B. 23(b)(2)
Plaintiffs also move to certify a class for both Florida and New York purchasers under Rule 23(b)(2), seeking injunctive and declaratory relief under the FDUTPA and New York's General Business Law § 349, respectively. Plaintiffs seek to enjoin Defendants from: (1) engaging in false and misleading advertising, (2) selling the product as currently formulated, and (3) placing products on the market without claim substantiation. Pls. Mem. at 23. Plaintiffs also seek a declaratory judgment that the packaging contains false and misleading representations and that the product causes hair and scalp damage. Id.
The FDUTPA outlaws "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204. New York's Section 349 similarly outlaws "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a).
Rule 23(b)(2) permits class certification where the party against whom relief is sought "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).
Defendants do not argue that the alleged class does not meet this standard, nor could they, as the representations on the product's packaging are displayed equally to all putative class members.
Instead, defendants argue that class certification is inappropriate because plaintiffs seek substantial, non-incidental monetary relief. See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 360-61, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011) (holding that Rule 23(b)(2)"does not authorize class certification when each class member would be entitled to an individualized award of monetary damages"). But plaintiffs do not seek monetary relief under 23(b)(2), only through separately certified 23(b)(3) classes, with the concomitant procedural protections for absent members. See Sykes v. Mel Harris & Assocs., LLC, 285 F.R.D. 279, 293 (S.D.N.Y. 2012), aff'd 780 F.3d 70 (2d Cir. 2015) ("That plaintiffs are seeking substantial monetary damages is of no concern given the Court's certification of separate Rule 23(b)(2) and (b)(3) classes addressing equitable relief and damages, respectively.").
Defendants also argue that plaintiffs lack standing to seek this injunction against L'Oreal "because they are now wise to their alleged deception, at no risk of future injury." Defs. Mem. at 24. There is a split of authority on whether a plaintiff has standing to seek an injunction against allegedly deceptive advertising even though she does not plan to purchase the product in question again. Compare Tomasino v. Estee Lauder Companies Inc., 44 F.Supp.3d 251, 255-56 (E.D.N.Y. 2014) (plaintiff did not have standing) with Ackerman v. Coca-Cola Co., No. 09-cv-395, 2013 WL 7044866, at *15 n.23 (E.D.N.Y. July 18, 2013) (plaintiffs did have standing, and collecting cases).
*770 However, the laws of both states at issue here permit a broad class of plaintiff to seek injunctive relief. In New York, "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice." N.Y. Gen. Bus. Law § 349(h). In Florida, "anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part." Fla. Stat. § 501.211. "Nothing in the statute requires proof that the declaratory or injunctive relief would benefit the consumer filing the suit." Davis v. Powertel, Inc., 776 So.2d 971, 975 (Fla. Dist. Ct. App. 2000).
These statutes are written so broadly for good reason: they are intended to protect the people of the state from deceptive conduct. As one court put it, adopting defendant's position
would denigrate the New York consumer protection statute, designed as a major support of consumers who claim to have been cheated. The only way a consumer could enjoin deceptive conduct would be if he were made aware of the situation by suffering injury. But once the consumer learned of the deception, he would voluntarily abstain from buying and therefore could no longer seek an injunction.
Belfiore v. Procter & Gamble Co., 94 F.Supp.3d 440, 445 (E.D.N.Y. 2015) (Weinstein, J.). Defendants' position would remove these important consumer protection tools while providing none of the benefits the standing doctrine is meant to protect.
Plaintiffs allege, moreover, that they "intend to buy hair products in the future, including relaxers, under brands that may be owned or acquired by L'Oreal." Supp. Rosner Decl., Exs. 39-42 ¶ 4. Plaintiffs cannot trust that the advertising on those products is accurate absent specific injunctions ordering defendants not to engage in false or misleading advertising and not to place products on the market without claim substantiation, or, indeed, as long as this harmful product remains on the shelves. See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 184, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (finding standing to seek an injunction where plaintiffs feared injury from swimming in the allegedly polluted river). In light of the important statutory rights at issue, this suffices for Article III standing.
Plaintiffs also seek declarations that the product packaging contains false and misleading representations and that the product damages hair and scalps. Defendants argue that such a declaration would not provide "final injunctive relief," as required by Rule 23(b)(2), but would serve only as a springboard to future litigation of damages. Declaratory judgments under 23(b)(2) must be "corresponding" to injunctive relief. Fed. R. Civ. P. 23(b)(2). "Declaratory relief 'corresponds' to injunctive relief when as a practical matter it affords injunctive relief or serves as a basis for later injunctive relief." Fed. R. Civ. P. 23(b)(2) advisory committee notes to 1966 amendment.
A declaration that the product packaging contains materially false and misleading representations and that the product itself damages hair and scalps formalizes the justification for the injunction and so "corresponds" to injunctive relief. Defendants cite Kartman v. State Farm Mut. Auto. Ins. Co., 634 F.3d 883 (7th Cir. 2011), but it is distinguishable. The court in Kartman denied class certification where plaintiffs sought new inspections of class members' houses because the remedy *771 was not "final" in that it would only lead to new litigation based on the result of those inspections. Id. at 890. The declaration plaintiffs seek may be used in future litigation of damages, but it is not solely for that purpose.[6]
The Court therefore finds that the proposed New York and Florida Classes meet the requirements of 23(b)(2), and grants the motion for certification of those classes.
V. CONCLUSION
For the foregoing reasons, the Court grants plaintiffs' motion to certify the New York and Florida Classes under Rule 23(b)(3) to pursue unjust enrichment claims, and, for the New York Class, to seek statutory damages under New York's General Business Law § 349. The Court also grants plaintiffs' motion to certify the New York and Florida Classes under Rule 23(b)(2) to seek injunctive and declaratory relief.
The New York Class is defined as "All persons who bought one or more of the products in New York from August 19, 2013 to the present." The Florida Class is defined as "All persons who bought one or more of the products in Florida from December 1, 2012 to the present." The Court appoints Sandi Turnipseed, Jennifer Sanon, and Jasmin Hervey as class representatives for the New York Class, and appoints Tiffany Raines as class representative for the Florida Class. The Court appoints Levi & Korsinsky, LLP and Geragos & Geragos, APC as class counsel. The Court denies plaintiffs' motion to certify the remaining classes.
The Clerk of Court is directed to close documents numbered 104 on the docket of this case.
SO ORDERED.

Plaintiffs note in their Reply that they "inadvertently defined" the Non-Economic Injury Class to include Florida purchasers in their original brief. Reply Memorandum of Law in Support of Plaintiffs' Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel ("Pls. Reply") at 14 n.29, ECF No. 129.

Plaintiffs argue that the named plaintiffs have shown specific reliance, Pls. Reply at 5 (citing affidavits), but this dispute simply underscores the point that reliance on these representations cannot be shown using classwide proof.

This Court held in its order on the motion to dismiss that "the requirement of reliance is subsumed into the question of whether the warranty was part of the basis of the bargain, and there is a presumption that a seller's affirmations go to the basis of the bargain." Dkt. 98. at 23. However, at that point the parties agreed that all eleven of the states whose purchasers were part of the then proposed class had adopted the U.C.C. Now several of those states are no longer included in plaintiffs' Multistate Class, while over a dozen other states have been added. As plaintiffs recognize, the law is no longer uniform on this point. See Supplemental Declaration of Michael H. Rosner in Support of Plaintiffs' motion for Class Certification, Appointment of Class Representatives, and Appointment of Counsel dated September 9, 2017 ("Supp. Rosner Decl."), Ex. 46, ECF No. 130 (chart citing express warranty law on reliance).

Compare Duncan Place Owners Ass'n v. Danze, Inc., No. 15-cv-1662, 2016 WL 3551665, at *10 (N.D. Ill. June 30, 2016) ("[I]n Washington, a buyer need only show that he knew of the express representation at the time of purchase") with Reece v. Good Samaritan Hosp., 90 Wash. App. 574, 585, 953 P.2d 117 (1998) (affirming grant of summary judgment on express warranty claim where plaintiff "introduced no evidence that she relied on the alleged express warranty").

If the evidence shows that selling the product without disclosing the risk of injury unjustly enriched defendants by less than the full value of each product sold, other measures of damages, such as a partial refund, may be available.

Defendants also argue that the declaratory relief plaintiffs now seek varies from the complaint, but plaintiffs sought broad equitable and injunctive relief "on terms that the Court considers reasonable." Complaint ¶ 300, ECF No. 1.