**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARY BETH MONTERA,
individually and on behalf of all others
similarly situated,

      *Plaintiff-Appellant /*
*Cross-Appellee*,

  v.

PREMIER NUTRITION
CORPORATION, FKA Joint Juice,
Inc.,

      *Defendant-Appellee /*
*Cross-Appellant*.

Nos.  22-16375
       22-16622

D.C. No. 3:16-cv-
06980-RS

OPINION

Appeal from the United States District Court
for the Northern District of California
Richard Seeborg, Chief District Judge, Presiding

Argued and Submitted February 14, 2024
San Francisco, California

Filed August 6, 2024

Before:  Sidney R. Thomas, David F. Hamilton,[*] and
Morgan Christen, Circuit Judges.

Opinion by Judge Christen

## SUMMARY[**]

### Consumer Class Action / Product Labels

The panel affirmed in part, reversed in part, and vacated and remanded in part the district court's judgment following a jury trial and award of statutory damages in a consumer class action alleging that Premier Nutrition Corporation engaged in deceptive conduct and false advertising in violation of New York law based on representations made on the packaging of Joint Juice, a dietary supplement drink made by Premier, that touted its ability to relieve joint pain.

Mary Beth Montera sued Premier on behalf of a class of New York consumers for violations of New York General Business Law (GBL) §§ 349 and 350, which require a plaintiff to show that the defendant engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.

---

[*] The Honorable David F. Hamilton, United States Circuit Judge for the U.S. Court of Appeals for the Seventh Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Addressing Premier's liability under GBL §§ 349 and 350, the panel rejected Premier's argument that its statements about Joint Juice's efficacy were not materially misleading, held that Montera's injury is cognizable under New York law, and held that Montera proved at trial that the class members' injuries were caused by Premier's misrepresentations. The panel also rejected Premier's argument that class certification was improper.

The panel rejected Premier's contention that the district court's evidentiary rulings and Montera's counsel's inflammatory arguments entitled it to a new trial.

The panel affirmed the district court's ruling that statutory damages under GBL §§ 349 and 350 should be calculated on a per-violation basis. The panel remanded for the district court to consider whether the imposition of the total award of statutory damages, which the district court had reduced, would violate Premier's due process rights in light of the factors identified in *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109 (9th Cir. 2022). Finally, the panel reversed the district court's award of prejudgment interest.

---

## COUNSEL

Leslie E. Hurst (argued), Timothy G. Blood, Thomas J. O'Reardon II, and Paula R. Brown, Blood Hurst & O'Reardon LLP, San Diego, California; Todd D. Carpenter, Lynch Carpenter LLP, Del Mar, California; Eugene G. Iredale, Iredale and Yoo APC, San Diego, California; Grace Jun, Law offices of Grace Jun, San Diego, California; for Plaintiff-Appellant.

Aaron D. Van Oort (argued) and Hannah M. Leiendecker, Faegre Drinker Biddle & Reath LLP, Minneapolis, Minnesota; Mark D. Taticchi and Ashlee A. Paxton-Turner, Faegre Drinker Biddle & Reath LLP, Washington, D.C.; Angel A. Garganta, Amit Rana, and Steven E. Swaney, Venable LLP, San Francisco, California; Jessica Grant, Shook Hardy & Bacon LLP, San Francisco, California; Antonia I. Stabile, Benesch Friedlander Coplan & Aronoff LLP, San Francisco, California; for Defendant-Appellee.

## OPINION

CHRISTEN, Circuit Judge:

This consumer class action involves New York purchasers of Joint Juice, a dietary supplement drink made by defendant Premier Nutrition. Mary Beth Montera sued Premier on behalf of a class of New York consumers for deceptive conduct and false advertising in violation of New York General Business Law (GBL) §§ 349 and 350 based on representations on Joint Juice's packaging that touted its ability to relieve joint pain. The district court certified a class and the case proceeded to trial. Montera introduced peer-reviewed, non-industry-funded studies finding that Joint Juice's key ingredients, glucosamine and chondroitin, have no effect on joint function or pain; Premier maintained the product's efficacy based on industry-funded studies. The jury found the statements on Joint Juice's packaging deceptive under New York law, and the district court awarded statutory damages to the class.

Both parties appeal the district court's rulings. Premier contends that the district court applied erroneous

interpretations of New York law when it certified the class and denied Premier's post-trial motion for judgment as a matter of law.  In Premier's view, Montera did not prove liability, either individually or on a classwide basis.  Premier further contends that the district court made numerous errors during the trial and when it calculated statutory damages on a per-violation basis and awarded prejudgment interest. Montera appeals the district court's decision to cut statutory damages by over 90%.

We find no errors in the district court's class certification rulings, analysis of New York law, trial rulings, or initial calculation of statutory damages.  But we conclude that the award of prejudgment interest was error, and that the statutory damages award must be reconsidered in light of our intervening decision in *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109 (9th Cir. 2022).  We therefore affirm in part, reverse in part, and vacate and remand in part.

## I.    BACKGROUND

This case began as a putative nationwide consumer class action for the allegedly deceptive advertising of Joint Juice. After the district court declined to certify a nationwide class, plaintiffs filed nine separate cases, each bringing claims under the laws of a different state.  The court first certified a class in the California case, *Mullins v. Premier Nutrition Corp.*, No. 13-cv-01271 (N.D. Cal.), then certified the other classes, including the *Montera* class, in a single order that was entered in each case.  The district court ordered the parties to provide "two cases to prioritize for trial, one chosen by the Plaintiffs and one chosen by the Defendant." Plaintiffs proposed the New York case and Premier proposed the Massachusetts case.  The district court chose *Montera*, the New York case, to go first.  After the close of discovery

and prior to trial, Premier moved to decertify the New York class. The district court denied the motion.

The evidence at trial showed that Premier targeted its Joint Juice advertising to people who suffer joint pain as a result of osteoarthritis. The shrink-wrap packaging for Joint Juice sported the Arthritis Foundation logo and name, and made claims such as "Use Daily for Healthy, Flexible Joints" and "A full day's supply of glucosamine combined with chondroitin helps keep cartilage lubricated and flexible." The jury heard that Premier spent just under $40 million between 2009 and 2015 to market and advertise Joint Juice, and netted annual sales of approximately $20 million in both 2020 and 2021.

Both parties offered expert witnesses to testify about scientific studies on the effect of glucosamine and chondroitin on joint health. Montera offered evidence of numerous studies conducted over the past three decades, including three by the National Institutes of Health, that found glucosamine and chondroitin had no effect on joint health. In contrast, industry-funded studies almost uniformly found glucosamine to be effective for joint pain, though some of the sponsoring companies refused to release data for external review. Evidence showed that Premier was aware of the studies concluding that glucosamine and chondroitin have no effect on joint health but continued to sell—and increased its marketing of—Joint Juice to arthritis and joint-pain sufferers. For example, Montera introduced an internal email dated January 2011, in which the brand director for Joint Juice wrote, "there is no scientific evidence for chondroitin at 200 mg." When Premier considered running its own study, its president wrote a note that was introduced at trial: "if poor—don't publish." For its defense, Premier introduced evidence that some studies found that

glucosamine and chondroitin have therapeutic benefits, and that Joint Juice is beneficial because it is hydrating and contains Vitamins C and D.

Both parties' experts introduced surveys they conducted that sought to determine what messages Joint Juice's packaging conveyed to consumers and whether that messaging was material to consumers' decisions to buy Joint Juice. Montera's expert testified that 92.5 percent of respondents to his study "believed that the product packaging was communicating one or more of [the packaging's claimed] joint health benefits," and 56% of respondents said that Joint Juice's claimed joint health benefits "were material to their purchase decisions." Montera also introduced Premier's internal customer survey in which 96% of those surveyed said they were managing chronic pain, 75% said they bought Joint Juice because they have joint pain and thought the drink would help them, and 56% said they had been diagnosed with arthritis. In Premier's expert's survey, 21.5% of respondents said that information on Joint Juice's packaging influenced their purchase decisions, and 32.3% said they had generally heard about the benefits of glucosamine.

After a nine-day trial, the jury returned a verdict for Montera, finding that Premier "engaged in an act or practice that [was] deceptive or misleading in a material way" and that "Montera and the class suffered injury as a result." The jury further found that 166,249 units of Joint Juice had been sold in New York during the class period and that the class's actual damages (based on average purchase price) were $1,488,078.49. GBL §§ 349 and 350 require courts to award the greater of actual damages or statutory damages of $50 or $500, respectively. N.Y. Gen. Bus. Law §§ 349(h), 350-e. Because the jury found Premier liable under both §§ 349 and

350, Montera sought $550 per unit sold in statutory damages, totaling $91,436,950. Premier argued that a damages award of $91,436,950 would violate its right to substantive due process. The district court agreed and awarded statutory damages of $50 per unit sold—the amount available under § 349—totaling $8,312,450. The district court also awarded $4,583,004.90 in prejudgment interest and entered final judgment on August 12, 2022. Premier filed post-trial motions to decertify the class and for judgment as a matter of law or a new trial, all of which the district court denied. Both Montera and Premier timely appealed.

## II. STANDARD OF REVIEW

We review de novo a district court's denial of a motion for judgment as a matter of law, and "[a] jury verdict will be upheld if supported by substantial evidence." *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 20 F.4th 466, 476 (9th Cir. 2021). "We review a district court's formulation of civil jury instructions for an abuse of discretion, but we consider *de novo* whether the challenged instruction correctly states the law." *Wilkerson v. Wheeler*, 772 F.3d 834, 838 (9th Cir. 2014). We review for abuse of discretion a district court's class certification orders, evidentiary rulings, and denials of motions for a new trial. *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1090–91 (9th Cir. 2010); *United States v. Daly*, 974 F.2d 1215, 1216–17 (9th Cir. 1992); *Kode v. Carlson*, 596 F.3d 608, 611 (9th Cir. 2010) (per curiam).

When interpreting New York law, we are bound by the decisions of New York's highest court, the Court of Appeals. *See In re Kirkland*, 915 F.2d 1236, 1238 (9th Cir. 1990). "In the absence of such a decision, a federal court must predict

how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Id.* at 1239.

## III.  DISCUSSION

On appeal, Premier argues that Montera failed to prove deceptive conduct, injury, and causation under New York law.  Premier also argues that the district court abused its discretion in its class certification and trial rulings, and erred in its calculation of statutory damages and prejudgment interest.  Montera appeals the district court's reduction of the statutory damages award.  We affirm the district court on all issues except its award of prejudgment interest.  Because we issued an intervening decision concerning Premier's substantive due process challenge to the damages award, we also vacate and remand the district court's reduction of the award for reconsideration in light of this new authority.

### A.  Liability under GBL §§ 349 and 350

Montera brought claims under two overlapping New York consumer protection laws.  GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349.  GBL § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 350.  Section 350 specifically addresses false advertising but otherwise has the same broad scope and standard for recovery as § 349. *See Karlin v. IVF Am., Inc.*, 712 N.E.2d 662, 665 (N.Y. 1999); *Goshen v. Mut. Life Ins. Co. of New York*, 774 N.E.2d 1190, 1195 n.1 (N.Y. 2002).

To succeed on a claim under § 349 or § 350, the plaintiff must show that the defendant "engaged in (1) consumer-

oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 675 (N.Y. 2012) (citation omitted). The first element is not at issue in this case. Premier contends that Montera cannot satisfy the second or third elements.

For the second element, Premier argues that its conduct was not materially misleading as a matter of law because its claims about Joint Juice's efficacy were substantiated. Premier advances no persuasive authority to support this argument. For the third element, Premier argues that Montera's injury is not cognizable under New York law and that, even if it is cognizable, Montera cannot show that her injury was caused by the statements on the Joint Juice packaging. We conclude that New York law recognizes Montera's injury, and that Montera proved at trial that the class members' injuries were caused by Premier's misrepresentations.

### 1. Materially misleading conduct

Premier argues that it was entitled to judgment as a matter of law because, in its view, it substantiated its claims about the efficacy of glucosamine and chondroitin and therefore those claims were not deceptive under New York law. Premier fails to support its position that the deceptiveness of its statements was a question of law under the circumstances of this case. It also overlooks that the jury, after considering the studies introduced by both sides, found as a matter of fact that Joint Juice was "valueless for its advertised purpose."

Claims under GBL §§ 349 and 350 require "a showing that [the] defendant is engaging in an act or practice that is

deceptive or misleading in a material way." *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995). New York courts have adopted "an objective definition of deceptive acts and practices" that is "limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* at 745.

Whether Premier's statements were misleading was a question of fact decided by the jury at trial. *See Sims v. First Consumers Nat'l Bank*, 758 N.Y.S.2d 284, 286 (App. Div. 2003) ("Whether defendants' conduct was deceptive or misleading is a question of fact."); *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) ("[The deceptiveness] inquiry is generally a question of fact . . . ."). New York law permits a court to decide that a statement is not deceptive as a matter of law in narrow circumstances, not present here, such as when "a plaintiff's claims as to the impressions that a reasonable consumer might draw are patently implausible or unrealistic." *Anderson v. Unilever U.S., Inc.*, 607 F. Supp. 3d 441, 452 (S.D.N.Y. 2022) (internal quotation marks and citation omitted).

The district court instructed the jury that Montera "must prove that the advertisement was likely to mislead a reasonable consumer acting reasonably under the circumstances" and that Montera suffered an injury only if Joint Juice is "valueless for its advertised purpose."[1]  The

---

[1] The district court did not adopt Montera's proposed injury instruction. Montera requested an instruction stating that the class was injured if "a reasonable consumer did not receive the full value or benefit of the product as advertised." Premier requested an instruction that allowed the jury to find injury only if Joint Juice was "valueless." Montera objected to the district court's partial adoption of Premier's language, and Premier defended the district court's "valueless for its advertised purpose"

jury considered each party's evidence, including their competing scientific studies, and found that Montera established both elements.  Thus, contrary to Premier's first argument on appeal, judgment as a matter of law in its favor was not required merely because it introduced studies that supported its view of Joint Juice's efficacy.  The jury considered the evidence offered by both parties and found that Premier's statements about Joint Juice's efficacy for treating joint pain were materially misleading, which is all the second element of a §§ 349 or 350 claim requires.

Premier cites no authority that supports its contention that "New York law provides that a claim is not misleading as a matter of law when it is substantiated."  Premier argues that the most on-point decision is *Parker v. United Industries Corp.*, 2020 WL 5817012 (S.D.N.Y. Sept. 29, 2020).  But *Parker* is of little help to Premier.  In that case, the plaintiff alleged that the defendant's bug repellant deceptively claimed it "repels mosquitoes for hours."  *Id.* at *4.  The district court granted summary judgment for the defendant because there was no genuine dispute of fact as to the deceptiveness of the statement.  *Id.*  Specifically, the court reasoned that the plaintiff's evidence did not establish that the spray was "ineffective for all individuals, even if this Court were to credit [the plaintiff's] cited studies and expert's analysis and discount those proffered by the Defendant."  *Id.*  The *Parker* court's ruling was specific to the evidence presented; it did not purport to apply a rule of New York law that claims under §§ 349 and 350 necessarily

---

instruction, arguing that Montera's "full value" language was contrary to New York law.  Montera has not argued in these appeals that the district court's injury instruction was erroneous, and we express no view on the question.

fail if both sides introduce reputable scientific studies supporting their respective positions.

Given the jury's factual finding that Joint Juice's packaging was materially misleading and Premier's failure to support its interpretation of New York law, we conclude that the district court correctly rejected Premier's argument that Joint Juice's packaging was not misleading as a matter of law.

As an alternative to its argument that it was entitled to judgment as a matter of law, Premier argues that it is entitled to a new trial because the district court declined to instruct the jury on a regulatory safe harbor that provides a defense to § 349 liability. We are not persuaded.

Section 349 provides that "it shall be a complete defense" to liability if a challenged practice is "subject to and complies with the rules and regulations of" a federal regulatory agency. N.Y. Gen. Bus. Law § 349(d). Premier contends that it complied with the Food and Drug Administration's (FDA) dietary supplement regulation, 21 C.F.R. § 101.93, and was therefore entitled to § 349(d)'s safe harbor. That federal regulation permits dietary supplement labels to include "structure/function" claims. Such claims may "describe the role of a nutrient or dietary ingredient" on the "structure or function" of the human body, "provided that such statements are not disease claims." 21 C.F.R. § 101.93(f). "Disease claims" are statements "that the product itself can cure or treat a disease." *Greenberg v. Target Corp.*, 985 F.3d 650, 654 (9th Cir. 2021) (citing § 101.93(g)). To comply with § 101.93(f), a manufacturer must notify the FDA within 30 days of first marketing a supplement that the product's label includes a qualifying

claim, and certify that the claim is substantiated, among other requirements.  21 C.F.R. § 101.93(a)(1), (a)(3).

After the close of evidence, the district court declined to instruct the jury on Premier's safe harbor defense because Premier did not dispute that it failed to comply with the regulation's 30-day notice requirement.  Premier began including the challenged statements on Joint Juice's packaging in 2009 but did not send the required notification to the FDA until 2012.  Premier offered no evidence that the FDA excused its failure to comply with the regulatory deadline and offers no support for its assertion that the 2012 notice cured its earlier lack of compliance.  Because Premier concedes that it did not comply with the plain text of the regulation, the district court did not err by declining to instruct the jury on the safe harbor provision.[2]

## 2.  Injury

GBL §§ 349 and 350 require plaintiffs to show that the defendant's "deceptive act or practice . . . caused actual, although not necessarily pecuniary, harm."  *Oswego*, 647 N.E.2d at 745.  The district court instructed the jury that the class was "injured by purchasing Joint Juice if it was valueless for its advertised purpose."  In his closing argument, Montera's counsel asked the jury for a full refund, but he acknowledged that the jury could also conclude that a reasonable consumer could find some value in Joint Juice separate from its advertised purpose of treating joint pain, such as hydration or Vitamin C.  Montera's counsel explained to the jury that they might reduce the class's

---

[2] We grant Montera's unopposed request for judicial notice of certain FDA and Federal Trade Commission guidance documents (Dkt. No. 45) because these are government sources "whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).

damages accordingly.  The jury's special verdict form shows that the jury found the class was injured by purchasing Joint Juice, and it awarded damages equal to the total amount spent on Joint Juice during the class period based on average purchase price.  Despite the suggestion by Montera's counsel, the jury declined to reduce the damages amount on account of Joint Juice having any residual value apart from its advertised purpose.

Premier contends that only two types of injuries are cognizable under §§ 349 and 350: a claim that a product affirmatively harmed the consumer, or a claim that the consumer paid a "price premium" for a particular product attribute that was deceptively advertised.  Premier argues that New York law does not recognize the injury Montera pursued at trial because Montera sought a full refund based on Joint Juice not providing the benefits promised by the packaging.  Montera did not contend that ingesting Joint Juice injured class members or that the class paid a higher price than they should have paid for the product.  Thus, Premier contends that it is entitled to judgment as a matter of law because Montera did not state a cognizable injury under §§ 349 and 350.  In the alternative, Premier argues that it is entitled to a new trial because the district court erred when it instructed the jury on injury.

We reject Premier's strained reading of New York law, and find no error in the district court's denial of Premier's motion for judgment as a matter of law on the ground that Montera did not state a cognizable injury.  We also find no error in the district court's injury instructions.

Premier relies on *Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892 (N.Y. 1999), which involved five proposed class action suits against tobacco companies.  In that case, the

plaintiffs alleged that the companies "deceived them about the addictive properties of cigarettes and fraudulently induced them to purchase and continue to smoke cigarettes." *Id.* at 894. Critically, the plaintiffs did not argue that they were injured by becoming addicted to nicotine. *Id.* at 898. Instead, the only injury the plaintiffs claimed was "that defendants' deception prevented them from making free and informed choices as consumers." *Id.* The New York Court of Appeals held that the plaintiffs had not stated a cognizable injury under § 349. *Id.*

Premier latches onto the Court of Appeals' comment that the plaintiffs' "theory contains no manifestation of either pecuniary or 'actual' harm; plaintiffs do not allege that the cost of cigarettes was affected by the alleged misrepresentation, nor do they seek recovery for injury to their health as a result of their ensuing addiction." *Id.* From this, Premier argues that the *Small* court limited cognizable injuries under § 349 to price premium and physical injury claims. Not so. Premier overlooks that the *Small* court's reasoning addressed the specific deficiencies in the plaintiffs' complaint. The court explained that "*[w]ithout addiction as part of the injury claim*, there is no connection between the misrepresentation and any harm from, or failure of, the product," and the plaintiffs' claim "thus sets forth deception as both act and injury." *Id.* (emphasis added). In other words, *Small* held that the plaintiffs in that case got the cigarettes they paid for and made no claim that they were either harmed by the product or deceived into paying too much for it. The alleged deception about the addictive quality of cigarettes had no effect on the product the plaintiffs received. Critically, the plaintiffs in *Small* did not limit their class to only those who became addicted to

cigarettes, nor did they allege that the cigarettes promised anything extra that they did not receive.[3]

In contrast, Montera alleges that the Joint Juice class members did *not* get what they paid for because they purchased a product that was advertised to improve joint health but in reality did not. *See DeRiso v. Synergy USA*, 773 N.Y.S.2d 563, 563 (App. Div. 2004) (explaining that the plaintiff failed to allege a § 349 injury under *Small* because she "d[id] not claim that defendant failed to deliver the [promised] services"). Montera properly alleged deceptive conduct that was distinct from her claimed injury. Premier's deceptive conduct was its statements touting joint health on Joint Juice's packaging, and the class's claimed injury was the purchase of a product that did not deliver its advertised benefits. The jury found that Joint Juice had no value to the class members without its advertised joint health benefits.

Premier's argument that New York law recognizes only two types of injuries is further undermined by the Second Circuit's decision in *Orlander v. Staples, Inc.*, 802 F.3d 289 (2d Cir. 2015). The plaintiff in *Orlander* had purchased a Staples computer protection plan that promised two years of repair services. *Id.* at 293. In reality, the repair services were not available until the manufacturer's one-year warranty had

---

[3] We are similarly unpersuaded by Premier's reliance on *Donahue v. Ferolito, Vultaggio & Sons*, 786 N.Y.S.2d 153 (App. Div. 2004). Applying *Small*, *Donahue* affirmed the dismissal of a consumer suit alleging deceptive statements about health benefits on herbal tea and fruit punch labels because the plaintiff had not alleged a cognizable injury. *Id.* at 154. As in *Small*, the *Donahue* plaintiffs received products with some value—the tea and fruit punch were presumably tasty beverages despite their lack of health benefits—and the plaintiffs did not allege they were physically injured or paid an inflated price for the drinks.

lapsed. *Id.* at 294. The Second Circuit held that the plaintiff sufficiently alleged an injury under §§ 349 and 350 because he paid "for a two-year . . . Protection Plan which he would not have purchased had he known that Defendant intended to decline to provide him any services in the first year of the Contract." *Id.* at 301. Staples argued, just as Premier does here, that the plaintiff's injury was not cognizable because it did not allege a price premium. *See id.* at 302. Rejecting Staples' argument, the *Orlander* court explained that "there is no such rigid 'price premium' doctrine under New York law," and that New York law permits a plaintiff to allege only that "on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Id.* (citing *Small*, 720 N.E.2d at 898). Here, the jury concluded that the class members purchased Joint Juice and did not receive the full value of their purchase—in fact, did not receive any value—because Joint Juice did not provide its advertised benefits. Contrary to Premier's characterization, this case arguably takes the price premium theory to its logical endpoint: the jury found that Joint Juice was entirely "valueless for its advertised purpose," so the entirety of the purchase price could be viewed as a price premium.

Finally, we consider that Premier's narrow view of injury under New York law would frustrate what the New York Court of Appeals has explained is the broad applicability of these statutes. Sections 349 and 350 "apply to virtually all economic activity, and their application has been correspondingly broad." *Plavin v. Grp. Health Inc.*, 146 N.E.3d 1164, 1168 (N.Y. 2020) (quoting *Karlin*, 712 N.E.2d at 665); *see also Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 171 N.E.3d 1192, 1197 (N.Y. 2021) ("GBL § 349 prohibits

deceptive acts and practices that misrepresent the nature or quality of products and services."); *Gaidon v. Guardian Life Ins. Co. of Am.*, 750 N.E.2d 1078, 1083 (N.Y. 2001) ("[Section 349] encompasses a significantly wider range of deceptive business practices that were never previously condemned by decisional law."). Premier's reading of New York law would immunize from liability the age-old deceptive tactics of the "grifting snake oil salesman," which spurred the adoption of some of the earliest consumer protection laws in this country.[4] Montera's claim that she purchased a sham product falls easily within the heartland of consumer injuries and is consistent with the expansive reach of §§ 349 and 350. *See Karlin*, 712 N.E.2d at 666 ("[Sections] 349 and 350 have long been powerful tools aiding the Attorney General's efforts to combat fraud in the health care and medical services areas.").

We conclude that Montera advanced a cognizable injury under §§ 349 and 350. Because Montera's injury is cognizable, we find no error in the district court's injury instructions.

### 3. Causation

Premier next argues that, even if Montera's injury is cognizable, it was entitled to judgment as a matter of law because Montera did not show that the class members' injuries were caused by the statements on Joint Juice's packaging. In Premier's view, Montera's theory of injury—that the class members would not have purchased Joint Juice absent Premier's misrepresentations—required her to prove

---

[4] Victor E. Schwartz et al., *Marketing Pharmaceutical Products in the Twenty-First Century: An Analysis of the Continued Viability of Traditional Principles of Law in the Age of Direct-to-Consumer Advertising*, 32 Harv. J.L. & Pub. Pol'y 333, 337 (2009).

at trial that Premier's "deceptive statement[s] caused each purchase." Premier further argues that because causation in this case is "an individual issue," common issues did not predominate and the district court should have granted Premier's pre- and post-trial motions to decertify the class. *See* Fed. R. Civ. P. 23(b)(3) (requiring that "questions of law or fact common to class members predominate over any questions affecting only individual members"). In the alternative, Premier argues that judgment must be granted in its favor "because no reasonable jury could find causation proven based on the evidence at trial."

We reject Premier's causation argument because it is inconsistent with New York law. Premier acknowledges that its argument would require Montera to prove that each class member relied on the challenged statements to make their purchase decisions. The Court of Appeals has unequivocally held that reliance is not required to show causation under GBL §§ 349 and 350. *Koch*, 967 N.E.2d at 676 ("Justifiable reliance by the plaintiff is not an element of [a § 349 or § 350] claim."). Instead, New York uses "an objective definition of deceptive acts and practices." *Oswego*, 647 N.E.2d at 745. Liability under §§ 349 and 350 "turns on what a *reasonable* consumer, not a particular consumer, would do." *Fishon v. Peloton Interactive, Inc.*, 620 F. Supp. 3d 80, 100 (S.D.N.Y. 2022) (citation omitted). "Because the test is objective and turns upon the reasonable consumer, reliance is not at issue, and the individual reason for purchasing a product becomes irrelevant and subsumed under the reasonable consumer standard, i.e., whether the deception could likely have misled someone, and not, whether it in fact did." *Id.* (internal quotation marks and citation omitted and alteration adopted); *see also Stutman v. Chem. Bank*, 731 N.E.2d 608, 613 (N.Y. 2000) (explaining

"there is a difference between reliance and causation" and holding plaintiffs need not "allege that they would not otherwise have entered into the transaction").   As the Eleventh Circuit recently explained in affirming certification of a class action under New York law, "Rule 23(b)(3)'s predominance requirement poses no barrier to class treatment of [§ 349] claims because it's unnecessary to make any individualized inquiry into what each plaintiff knew and relied on in purchasing his or her [product]." *Tershakovec v. Ford Motor Co.*, 79 F.4th 1299, 1310–11 (11th Cir. 2023).

The jury's findings satisfied New York's causation requirement.  The district court correctly instructed the jury to consider whether Premier's conduct was "misleading in a material way."   The instructions further explained that a representation is misleading if it "is likely to mislead a reasonable consumer acting reasonably under the circumstances" and that "[a] representation is material if a reasonable consumer would consider it important in determining whether to purchase the product."   These instructions correctly encapsulate New York's objective consumer test for deceptive practices.  The jury found that Premier's claims about the benefits of Joint Juice were materially misleading to a reasonable consumer and that all class members were injured as a result of purchasing a product "valueless for its advertised purpose."  *See CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009) ("[J]uries are presumed to follow the court's instructions.").   Given New York's objective consumer test and the jury's injury and causation findings, Montera was not required to establish that each class member subjectively relied on

Premier's misrepresentations when they purchased Joint Juice.[5]

Our rejection of Premier's causation argument is consistent with our caselaw analyzing consumer claims under other states' consumer protection laws. For example, in *Yokoyama*, the district court declined to certify a class because it determined that Hawaiʻi's "consumer protection laws require individualized reliance showings." 594 F.3d at 1093. Reversing the district court, we explained that Hawaiʻi "uses an objective test to effectuate its remedial consumer protection statute" and therefore whether a consumer relied on the defendant's misrepresentation required the jury "to determine only whether [the defendant's] omissions were likely to deceive a reasonable person." *Id.* Both Hawaiʻi and New York use an objective consumer test, but New York does not require reliance, making this case more straightforward than *Yokoyama*.

Having rejected Premier's view of New York's causation requirement, we easily dispose of Premier's remaining arguments that class certification was improper and that there was insufficient evidence for the jury to find causation. At trial, Montera presented evidence that Premier

---

[5] Premier also argues that New York law requires that each purchaser "saw the misrepresentation or was exposed to it in some other way." *Fishon*, 620 F. Supp. at 99. Assuming that New York law has such a requirement, it is satisfied in this case because the class members were exposed to the misrepresentations on the Joint Juice packaging when they purchased the product. *See Hasemann v. Gerber Prod. Co.*, 331 F.R.D. 239, 267 (E.D.N.Y. 2019) ("Requiring one hundred percent certainty that each and every customer has been exposed to the representations at issue would impermissibly depart from the objective standards of sections 349 and 350 of the GBL, and would impermissibly read a seeing and a reliance requirement into the statute.").

advertised Joint Juice to treat joint pain despite numerous studies concluding that glucosamine and chondroitin have no effect on joint health, and the majority of customers surveyed—56% in Montera's survey and 75% in Premier's internal survey—purchased Joint Juice because they thought it would help their joint pain.  The district court did not abuse its discretion by concluding that this evidence satisfied Rule 23(b)(3)'s predominance requirement.  *See Tershakovec*, 79 F.4th at 1311 ("[T]here can be no reliance-based predominance objection to class treatment of . . . § 349 claims . . . .").  The jury also had ample evidence before it to conclude that the misrepresentations on the Joint Juice packaging were materially misleading to a reasonable consumer and caused the class members' injuries.[6]

## B.  Trial issues

Premier contends that the district court's evidentiary rulings and Montera's counsel's inflammatory arguments entitle it to a new trial.  We disagree.

### 1.  Evidentiary rulings

Premier argues that the district court violated Federal Rules of Evidence 401, 402, and 403 by admitting evidence that was irrelevant, confusing, and unfairly prejudicial. Specifically, Premier challenges the admission of: (1) Premier's advertisements other than Joint Juice's packaging; (2) evidence about the size of Premier's parent

---

[6] Premier separately argues that the district court erroneously relied on California's law of causation when it denied Premier's motions to decertify.  The record refutes this contention.  The district court correctly applied the New York Court of Appeals' opinion in *Small*, and its citations to its prior order certifying a class under California law merely incorporated by reference the common evidence of causation, not the court's analysis of California law.

companies; and (3) a letter sent by Premier's tax advisor to a California recycling agency.

### a. Advertising evidence

The advertising evidence Montera offered included a list of Google AdWords that Premier purchased to market Joint Juice, many of which related to arthritis, and a television commercial featuring a celebrity recommending Joint Juice to help joint stiffness.

Premier first argues that this evidence was irrelevant under Rules 401 and 402 because it could not support Montera's claims about Joint Juice packaging and because not every New York purchaser saw the AdWords and television commercial. Evidence is relevant if it has any tendency to make a fact of consequence in the case more or less probable than it would be without the evidence. Fed. R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R. Evid. 402. Montera contends that this evidence was relevant to establish the message conveyed by the Joint Juice labeling. We agree.

At a minimum, the extra-label evidence was relevant to Premier's safe harbor defense because it tended to show that the packaging statements were meant to convey a disease claim, not a structure/function claim. We may consider evidence aside from a product's label to determine whether the label makes a structure/function claim or implicitly makes a disease claim. *See Kroessler v. CVS Health Corp.*, 977 F.3d 803, 815 (9th Cir. 2020) (quoting 65 Fed. Reg. 1000, 1006 (Jan. 6, 2000) (codified at 21 C.F.R. pt. 101)). In *Kroessler*, we noted that when evaluating implied disease claims, many courts have admitted "the product's advertisements, the consumer's experience with the product, and market research showing consumer's typical uses of the

product." *Id.* at 815 & n.9. The AdWords and television commercial fall within the types of evidence relevant to differentiating between structure/function claims and disease claims. Because Premier continued to press its safe harbor defense until the close of evidence, the district court did not abuse its discretion by ruling that the extra-label evidence was relevant to show the type of message Premier intended the Joint Juice packaging to convey.

Next, Premier argues that admission of the AdWords and television commercial violated Rule 403 because this evidence likely confused the jury about which marketing claims were at issue. Again, we disagree. Evidence may be excluded when its probative value is substantially outweighed by a danger of confusing the issues or misleading the jury. Fed. R. Evid. 403. Here, the extra-label advertising evidence was probative of Premier's intended packaging messages, and we see no danger of confusion. The district court instructed the jury that "[t]he acts, practices, and advertisements at issue for your analysis are the labels and packaging for the Joint Juice product," and that "you are not to assess whether any other acts, practices, or advertisements by Premier Nutrition are misleading or deceptive." "[J]uries are presumed to follow the court's instructions." *CSX Transp.*, 556 U.S. at 841. Because the risk of jury confusion did not outweigh the evidence's probative value, the district court did not abuse its discretion by admitting evidence of non-packaging advertising.

### b. Size of parent companies

Premier argues that evidence Montera elicited about Post Holdings and BellRing Brands, Premier's parent companies, was irrelevant and unfairly prejudicial. The district court ruled before trial that mention of Post was relevant when

discussing documents that referred to the company, but precluded mention of any parent company's financial condition because Montera was not seeking punitive damages, making the parent companies' finances irrelevant.

Premier challenges the district court's decisions overruling its objections to three instances during trial in which Montera's counsel elicited testimony about the parent corporations. None of these instances referred to the parent companies' financial condition. On one occasion, Montera asked a question about Joint Juice's corporate structure that elicited an answer about Post, as allowed by the district court's pre-trial ruling, and counsel then moved to another topic.[7] Next, Montera asked Premier's president about her roles at Premier and the parent companies, whether BellRing was traded on the New York Stock Exchange, and whether it was "a big company." When Premier objected, the district court told Montera to move on and denied Premier's request to remind the jury that BellRing and Post were not defendants. Finally, Montera asked a few questions about a children's cereal that Post manufactures after a testifying expert mentioned it in his report. These brief references were not unfairly prejudicial or likely to cause the jury to decide the case based on their views or impressions of large companies. The district court did not abuse its discretion in these evidentiary decisions.

### c.  California tax letter

Premier also argues that the district court erred by overruling its objection to a letter its tax advisor sent to the

---

[7] Montera's counsel had the following exchange with Joint Juice's brand director: "Q. You left Premier at some point after it had been acquired by another company; is that true?  A. Yes. . . .  Q. The name of that company was Post Holdings; is that correct?  A. Yes."

California Department of Resources Recovery and Recycling in 2010. The letter argued that Joint Juice should not be subject to a five-cent bottle deposit tax because it did not qualify as a "beverage" under California law, but rather was a "medical supplement" and "over-the-counter medication." Premier argues that the letter was irrelevant, unfairly prejudicial, and confusing to the jury.

In Premier's view, the letter was irrelevant because no New York consumer saw it, so it could not have affected any purchases. This argument fails because extra-label evidence of the message intended by Joint Juice's packaging was relevant to Montera's defense against Premier's regulatory safe harbor argument that the Joint Juice label made structure/function claims rather than disease claims. *See Kroessler*, 977 F.3d at 815.

With respect to Rule 403, Premier argues that admission of the 2010 letter was unfairly prejudicial and confusing because the letter was written in the context of California's bottle deposit laws, not FDA regulations. Contrary to Premier's contentions on appeal that the packaging was "entirely different" from the statements in the letter, the letter referred to Joint Juice's packaging as proof that the product was a medication. The letter included the statement, "Joint Juice® supplement . . . is an over-the-counter medication — not a soft drink — as indicated by its label, its ingredients, and its recommended daily consumption." Images of Joint Juice's packaging were attached to the letter as support. The letter's passing references to California law would not have distracted the jury from the relevant portions of the letter, such as its representation that "the only reason to purchase Joint Juice® supplement is for the medicinal value of the glucosamine and chondroitin it contains." The district court did not abuse its discretion by admitting

Premier's 2010 letter to the California Department of Resources Recovery and Recycling.

### 2. Counsel's arguments

Premier argues that the district court erred by denying Premier a new trial based on Montera's opening statement and closing argument, which Premier considered inflammatory. "To receive a new trial because of attorney misconduct," Premier must show that Montera's misconduct "substantially interfered" with Premier's interests. *SEC v. Jasper*, 678 F.3d 1116, 1129 (9th Cir. 2012) (quoting *Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1405 (9th Cir. 1995)). Because "the district court is 'in a superior position to gauge the prejudicial impact of counsel's conduct during the trial,' we will not overrule a district court's [assessment of] the impact of counsel's alleged misconduct unless we have 'a definite and firm conviction that the court committed a clear error of judgment.'" *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1192 (9th Cir. 2002) (quoting *Anheuser–Busch Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 346 (9th Cir. 1995)). Premier fails to show that Montera's arguments were improper, let alone that misconduct "permeate[d] [the] entire proceeding" such that reversal is warranted. *Jasper*, 678 F.3d at 1129 (quoting *Kehr v. Smith Barney, Harris Upham & Co.*, 736 F.2d 1283, 1286 (9th Cir. 1984)).

Premier first argues that Montera inappropriately suggested to the jury that Premier was "prey[ing] on the vulnerable." This argument fails because counsel "is allowed to argue reasonable inferences based on the evidence," *United States v. Sayetsitty*, 107 F.3d 1405, 1409 (9th Cir. 1997), and counsel's argument that "Joint Juice set out to target people who suffer from arthritis" was consistent

with the evidence of Premier's marketing strategy. Similarly, counsel's argument that Premier used "paid hacks and certified [q]uacks in the articles that they publish" was not untethered from the record; it was consistent with evidence about Premier relying on industry-backed studies, evidence that some of the sponsoring companies refused to release the underlying data for external review, and the note written by Premier's president not to publish the study Premier contemplated if it yielded unfavorable results.

Premier next argues that Montera "primed the jury's sense of community protectiveness by referring . . . to the defendant's size." Premier takes issue with Montera's counsel's comment during his opening statement that Premier is a "large company" and with evidence Montera introduced during her case-in-chief showing that Post Holdings acquired Premier in 2014. Premier overlooks that defense counsel commented during voir dire that Premier is "not really a corporation" and is instead "a much smaller company," and the district court's caution that those statements opened the door to contrary evidence and arguments. Premier also objects to the statement in Montera's closing argument that "[i]n our country, even the little people have the right to band together and say no. They have the power to say to the most powerful corporations, no, you cannot lie to us." We have held that appealing to the jury "to act as a conscience of the community" is not misconduct when it is not "specifically designed to inflame the jury." *United States v. Audette*, 923 F.3d 1227, 1239 (9th Cir. 2019) (quoting *United States v. Lester*, 749 F.2d 1288, 1301 (9th Cir. 1984)). Premier has not shown that Montera's statements crossed this line, or otherwise exceeded the bounds of a permissible response to defense counsel's suggestion that Premier was a small company.

Finally, Premier argues that counsel "repeatedly emphasized the supposed moral blameworthiness of Premier's conduct" and portrayed "everyone on Premier's side" as "liars and thieves." Montera responds that whether Premier's statements were false was relevant to its claim that Joint Juice's packaging was deceptive. We agree. "Using some degree of emotionally charged language during closing argument in a civil case is a well-accepted tactic in American courtrooms." *Settlegoode v. Portland Pub. Sch.*, 371 F.3d 503, 518 (9th Cir. 2004). We have recognized that lawyers are "entitled to argue that the jury should disbelieve the opposing party's witnesses for any number of reasons." *Id.* at 520. The district court did not abuse its discretion when it ruled that "Plaintiff's counsel stayed within the reasonable bounds of argument and did not improperly inflame the jury."

## C. Damages

Finally, we turn to the parties' competing challenges to the district court's calculation of damages and prejudgment interest. New York law provides that statutory damages are not an available remedy in class actions unless the New York Legislature expressly authorizes them. *See* N.Y. C.P.L.R. § 901(b) ("[A]n action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action.").**[8]** The parties agree that § 901(b) would prevent this case from being litigated as a class action in New York state court because the class seeks statutory damages. Because of § 901(b), there is limited

---

[8] In *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, the Supreme Court held that because § 901(b) is procedural, not substantive, it has no application in federal diversity suits such as this. 559 U.S. 393, 398 (2010).

precedent from New York courts on some questions presented by this appeal related to the calculation of damages. The district court calculated statutory damages by multiplying the number of Joint Juice units sold during the class period by the damages authorized by GBL §§ 349 and 350, resulting in a total award of $91,436,950. The court reduced the award after concluding that imposition of the total would violate Premier's substantive due process rights. Montera appeals the district court's remittitur; Premier challenges the court's initial calculation of statutory damages and award of prejudgment interest.

### 1. Calculating statutory damages

GBL §§ 349 and 350 allow for the greater of actual damages or statutory damages. Section 349(h) provides that "any person who has been injured by reason of any violation of this section may bring . . . an action to recover his actual damages or fifty dollars, whichever is greater." N.Y. Gen. Bus. Law § 349(h). Section 350-e similarly states that "[a]ny person who has been injured by reason of any violation of [this section] may bring . . . an action to recover his or her actual damages or five hundred dollars, whichever is greater." *Id.* § 350-e. The statutes are not explicit about whether statutory damages are calculated on a per-person or per-violation basis.

Lacking guidance from New York courts, the district court canvassed federal caselaw and concluded that "§§ 349(h) and 350-e allow statutory damages on a per unit basis," where each unit of Joint Juice sold represented a statutory violation.[9] The jury found that 166,249 units of

---

[9] The evidence showed that the vast majority of Joint Juice was sold in six- or thirty-pack units.

Joint Juice were sold in New York during the class period. After the verdict, Montera sought statutory damages of $91,436,950, which represented the combined statutory damage amount of $550 per unit. Premier argues that the district court erred because §§ 349 and 350 authorize statutory damages only on a per-plaintiff basis.

We know of no New York caselaw that resolves this question and federal courts have applied these statutes inconsistently. In some cases, the courts awarded damages without specifying how damages were calculated. In others, the distinction between awarding damages on a per-person or per-violation basis was not at issue because the cases involved single violations. [10]

---

[10] *See Chery v. Conduent Educ. Servs., LLC*, 581 F. Supp. 3d 436, 452 (N.D.N.Y. 2022) ("Section 349 only permits a plaintiff to recover once 'per violation.'"); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 526 (E.D.N.Y. 2017) (editing the quoted text of § 349 to read "actual damages or *fifty dollars [per transaction]*" and paraphrasing § 350 as "*five hundred dollars* per transaction" (alteration in original)); *Koch v. Greenberg*, 14 F. Supp. 3d 247, 262 (S.D.N.Y. 2014), *aff'd*, 626 F. App'x 335 (2d Cir. 2015) (upholding treble damages for each of 24 fraudulent wine bottles sold as part of a set but not discussing how to calculate damages); *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 87 (2d Cir. 2015) (stating only that "statutory damages under GBL § 349 can be assessed on the basis of common proof, as they are capped at $50" but offering no indication that any plaintiff experienced the fraudulent scheme more than once); *Allegra v. Luxottica Retail N. Am.*, 341 F.R.D. 373, 395 (E.D.N.Y. 2022) (concluding, without analysis, that § 349 "provides for damages of $50 *to each class member*" who bought eyeglasses (emphasis added)); *Haag v. Hyundai Motor Am.*, 330 F.R.D. 127, 133 n.5 (W.D.N.Y. 2019) (assuming that each class member who purchased a single vehicle with allegedly defective brakes "may be entitled to $50 each in statutory damages"); *Madden v. Midland Funding, LLC*, 237 F. Supp. 3d 130, 161 (S.D.N.Y. 2017) (quoting *Sykes*, 780 F.3d at 87, in stating that statutory damages under § 349 "are

The New York Court of Appeals has instructed that "[w]hen interpreting a statute, our primary consideration is to discern and give effect to the Legislature's intention. The text of a statute is the clearest indicator of such legislative intent and courts should construe unambiguous language to give effect to its plain meaning." *Avella v. City of New York*, 80 N.E.3d 982, 987 (N.Y. 2017) (internal quotation marks and citations omitted).

GBL §§ 349 and 350 create private causes of action for persons "injured by reason of any violation" of either statute. In our view, the plainest reading of that phrase is that a cause of action arises for each violation. Here, a class member suffered a violation each time they purchased a unit of Joint Juice bearing a deceptive label, whether packaged in a six- or thirty-pack, and New York law entitled them to receive either actual or statutory damages for each violation.

The history and purpose of §§ 349 and 350 support this reading. "[I]nitially only the Attorney General's Office could sue to enforce the statutes . . . ." *Plavin*, 146 N.E.3d at 1168. In 1980, recognizing "the inability of the New York State Attorney-General to adequately police false advertising and deceptive trade practices," *Beslity v. Manhattan Honda, a Div. of Dah Chong Hong Trading Corp.*, 467 N.Y.S.2d 471, 474 (App. Term 1983), the New

---

capped at $50" and implying that this cap was per person for putative class alleging that debt collector charged unlawful interest rate for each class members' account); *Geismar v. Abraham & Strauss*, 439 N.Y.S.2d 1005, 1008 (Dist. Ct. 1981) (awarding $50 in statutory damages to sole plaintiff who tried to purchase one dish set at advertised sale price); *Sharpe v. Puritan's Pride, Inc.*, 2017 WL 475662, at *2 (N.D. Cal. Feb. 6, 2017) (stating, without analysis, that § 349 "provides for the greater of actual damages or $50 in statutory damages *per person*" (emphasis added)).

York Legislature "amended both section 349 and 350 to add a private right of action . . . , allowing injunctive relief and damages, as well as reasonable attorney's fees," *Plavin*, 146 N.E.3d at 1168. The Legislature authorized statutory damages to "encourage private enforcement" and to "add a strong deterrent against deceptive business practices." *Beslity*, 467 N.Y.S.2d at 474 (quoting Mem. of Gov. Carey, On Approving L.1980, chs. 345 and 346, 1980 N.Y. Sess. Laws 1867 (June 19, 1980)). In 2007, the Legislature increased the statutory damages amount in § 350-e from $50 to $500 because "[c]urrent limits are too low to be effective." N.Y. State Senate Introducer's Mem. in Support for Bill No. S4589.[11]

The Legislature's use of the phrase "by reason of any violation" in the text of §§ 349 and 350 and its expansion of the statutes to create private causes of action in order to deter deceptive conduct supports calculating damages on a per-violation basis, as does the legal backdrop against which the Legislature enacted and amended §§ 349 and 350. Because New York law does not allow class actions for claims involving statutory damages, the Legislature was surely aware that the statutes' deterrent function would not be accomplished by aggregating statutory damages across a large number of plaintiffs. *See* N.Y. C.P.L.R. § 901(b). When the legislature increased the statutory damages award authorized by § 350 in 2007, the individual filing fees in

---

[11] We grant Montera's unopposed request for judicial notice of these materials (Dkt. No. 22) because "[l]egislative history is properly a subject of judicial notice." *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012).

New York state and county courts totaled $400 or more.[12] If statutory damages were calculated on a per-person basis, a consumer deceived into making several purchases of the same low-cost item might have to pay $400 in up-front filing fees to potentially recover $550 in combined statutory damages under §§ 349 and 350. We are not persuaded that the Legislature would have considered that such a meager incentive would accomplish the Legislature's express goal of deterring statutory violations.

We conclude that awarding statutory damages for each violation, particularly when the violation relates to a low-cost product, advances the Legislature's deterrent purpose and is consistent with the plainest reading of the statutory text. We therefore affirm the district court's ruling that statutory damages under §§ 349 and 350 should be calculated on a per-violation basis.

---

[12] Last increased in 2003, the filing fees in New York state and county courts include $210 for the clerk of court to assign "an index number" to a new case, N.Y. C.P.L.R. § 8018(a)(1), (3); $125 to "request judicial intervention" and place a case on a judge's trial calendar, *id.* § 8020(a); and $65 to request a jury trial, *id.* § 8020(c). On top of these $400 in initial fees, parties must pay a $45 fee for every motion filed. *Id.* § 8020(a).

The filing fees in small claims court in New York are lower, ranging from $10 to $20. *See* N.Y. Uniform Just. Ct. Act § 1803 (UJCA); N.Y. Uniform City Ct. Act § 1803 (UCCA); N.Y. Uniform Dist. Ct. Act § 1803 (UDCA). However, it would not be possible to bring a consumer claim against the vast majority of defendants in New York small claims court because defendants in small claims court must reside in or have an office in the same municipality as the town or village court or in the same county as the city or district court. *See* UJCA § 1801; UCCA § 1801; UDCA § 1801.

### 2. Substantive due process challenge to aggregate damages

Premier argued to the district court that a $91 million statutory damages award was substantively unreasonable and violated its due process rights.  The district court agreed that the total award was excessive, and it awarded the class $50 per violation, rather than $550 per violation.  The district court noted there was little guidance addressing when or how a court should reduce statutory damages on due process grounds, other than the Supreme Court's century-old opinion in *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63 (1919).  The district court instead looked to the Supreme Court's *State Farm* factors for assessing the substantive reasonableness of punitive damages awards.  *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003).

Two months after the district court entered final judgment, we published *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109 (9th Cir. 2022).  *Wakefield* concerned a company that placed over 1.8 million robocalls in violation of the Telephone Consumer Protection Act (TCPA).  *Id.* at 1116.  Based on the TCPA's fixed statutory penalty of $500 "for each [] violation," 47 U.S.C. § 227(b)(3)(B), the district court ordered the defendant to pay $925.2 million.  *Wakefield,* 51 F.4th at 1116.  We declined to endorse the application of the *State Farm* factors outside of the punitive damages context and instead instructed the district court to use the seven factors we identified in *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1309 (9th Cir. 1990), to decide "when an award is *extremely* disproportionate to the offense and 'obviously' unreasonable."  *Id.* at 1122–23 (quoting *Williams*, 251 U.S. at 67).  In light of this intervening authority, we remand for the district court to consider in the first instance whether the

statutory damages award violates due process under *Wakefield*. *See Six Mexican Workers*, 904 F.2d at 1310.[13] In doing so, we express no opinion on whether the award in this case was substantively unreasonable.

### 3.  Prejudgment interest

Premier challenges the district court's award of prejudgment interest on the statutory damages award. Section 5001(a) of the New York Civil Practice Law and Rules provides that "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property."  N.Y. C.P.L.R. § 5001(a).  Montera argues that she is owed prejudgment interest because the statutory damages here are compensatory in nature.

New York courts have cautioned that "the sole function of [§ 5001] interest is to make whole the party aggrieved.  It is not to provide a windfall for either party."  *Kaiser v. Fishman*, 590 N.Y.S.2d 230, 234 (App. Div. 1992); *see also Delulio v. 320-57 Corp.*, 472 N.Y.S.2d 379, 381 (App. Div. 1984) (declining to award prejudgment interest on punitive

---

[13] *Wakefield* instructed trial courts to consider whether "aggregation [of statutory damages] has resulted in extraordinarily large awards wholly disproportionate to the goals of the statute" and whether the award "greatly outmatch[es] any statutory compensation and deterrence goals." *Wakefield*, 51 F.4th at 1122.  Here, the district court considered the New York Legislature's goals in barring aggregate damages in class actions pursuant to § 901(b) and concluded that the Legislature's intent to limit aggregation of statutory penalties supported reducing the total damages award.  With the benefit of *Wakefield*, the relevant statutory goals for the district court to consider on remand include the Legislature's "compensation and deterrence goals" in enacting GBL §§ 349 and 350— the statutes that authorized the statutory damages at issue.  *Id.*

damages because "[i]nterest on such damages prior to verdict or decision is unnecessary to assure full compensation to the injured party"); *Stassou v. Casini & Huang Const., Inc.*, 789 N.Y.S.2d 225, 226 (App. Div. 2005) (applying *Delulio* and denying prejudgment interest). Montera's strongest case is *Navigators Insurance Co. v. Sterling Infosystems, Inc.*, a Fair Credit Reporting Act case where the New York court reasoned that "[s]ince the consumer must elect the option of either actual or statutory damages, and may also recover punitive damages, it is reasonable to infer . . . that the actual and the statutory damages serve the same purpose." 42 N.Y.S.3d 813, 814 (App. Div. 2016). Montera contends, under the reasoning in *Navigators*, that the statutory damages here are compensatory because GBL §§ 349 and 350 similarly allow for the award of either actual or statutory damages and separately provide for treble damages.

Montera overlooks the New York Court of Appeals' description of § 349(h)'s statutory and treble damages as "a nonmandatory *penalty*." *Borden v. 400 E. 55th St. Assocs., L.P.*, 23 N.E.3d 997, 1002 (N.Y. 2014) (emphasis added). As we have explained, "[s]tatutory damages differ meaningfully from actual damages: while actual damages only compensate the victim, statutory damages may compensate the victim, penalize the wrongdoer, deter future wrongdoing, or serve all those purposes." *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1008 (9th Cir. 2023). In this way, statutory damages resemble, and serve some of the same purposes as, punitive damages.

We conclude that the award of prejudgment interest was error. The statutory damages award in this case was not compensatory because it exceeded the jury's actual damages award of $1,488,078.49, which the jury based on the number

of units sold during the class period and the average price class members paid per unit of Joint Juice.  As such, any award of prejudgment interest in addition to an award of statutory damages would constitute a windfall.[14]

## IV.  CONCLUSION

We affirm the district court's orders denying Premier's motion for class decertification, judgment as a matter of law, and for a new trial.  We also affirm the district court's evidentiary and trial rulings and initial calculation of statutory damages.  We vacate the damages award and remand with direction to reassess Premier's substantive due process challenge to the award of statutory damages in light of the factors identified in *Wakefield*.  On remand, the district court shall not award prejudgment interest on statutory damages.[15]

---

[14] Nor is the class entitled to prejudgment interest on the portion of the statutory damages award that did not exceed the jury's actual damage calculation.  *Cf. Adiel v. Chase Fed. Sav. & Loan Ass'n*, 810 F.2d 1051, 1055 (11th Cir. 1987) (rejecting plaintiffs' "attempt to recover prejudgment interest" by arguing that a portion of a statutory damages award under the Truth in Lending Act should be characterized as actual damages).  The class was entitled to statutory damages *or* actual damages, whichever was greater.  N.Y. Gen. Bus. Law §§ 349(h), 350-e.  By recovering statutory damages, the class suffered no "deprivation of use of" its actual damages.  *Kaiser*, 590 N.Y.S.2d at 234.  Our conclusion is limited to the damages awarded in this case under §§ 349 and 350, and we do not address statutes that permit plaintiffs to recover both actual and statutory damages.

[15] Premier asks that we certify several questions of New York law to the New York Court of Appeals.  We deny Premier's motion for certification (Dkt. No. 32).  *See Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974) (explaining that the decision to certify "rests in the sound discretion of the federal court").

**AFFIRMED IN PART, REVERSED IN PART, AND VACATED AND REMANDED IN PART.**